**Clifford NUKAPIGAK, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 2915.**

Supreme Court of Alaska.

April 13, 1977.

Stephen R. Cline, Asst. Public Defender, Fairbanks, Brian Shortell, Public Defender, Anchorage, for appellant.

David Mannheimer, Asst. Dist. Atty., and Harry L. Davis, Dist Atty., Fairbanks, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

BURKE, Justice.

After trial by jury, Clifford Nukapigak was found guilty of the crimes of rape and assault with a dangerous weapon. The superior court imposed a six year sentence on the rape conviction and a three year sentence for the assault. Its judgment permitted the sentences to be served concurrently and made appellant eligible for parole after two years of imprisonment.

Nukapigak appeals, asserting three separate claims of error. Specifically, he contends:

1. That his sentence is excessive;

2. That the sentencing judge considered inadmissible hearsay material in formulating his sentence;

3. That the sentencing judge improperly considered allegations of prior criminal conduct for which appellant had never been indicted.

AS 12.55.120 provides in part:

(a) A sentence of imprisonment lawfully imposed by the superior court for a term or for aggregate terms exceeding one year may be appealed to the supreme court by the defendant on the ground that the sentence is excessive. . . .

In *State v. Chaney,* 477 P.2d 441, 443–44 (Alaska 1970) we said:

As we interpret this legislative enactment, it is our duty to examine the proceedings below to review for excessiveness or leniency the sentence imposed by the trial court, in light of the nature of the crime, the defendant's character, and the need for protecting the public. We are also obliged to consider the manner in which the sentence was imposed, including the sufficiency and accuracy of the information upon which it was based.

\*   \*   \*   \*   \*   \*

When a sentence is appealed, we will make our own examination of the record and will modify the sentence if we are convinced that the sentencing court was clearly mistaken in imposing the sanction it did. (footnotes omitted)

With these principles in mind, we turn to the case at bar.

Nukapigak was convicted of raping L. O. and assaulting her with a sharp instrument, cutting her around and within the vaginal area. The pre-sentence report prepared by Gail Frank, a probation officer, detailed the facts surrounding the crimes. The victim testified that on December 2, 1975, she had been invited by Nukapigak to accompany him and his friend Jack Susnook to Nukapigak's home in Barrow, Alaska. After the three spent the afternoon drinking and playing cards, Susnook left, at approximately 7:00 or 8:00 p.m. When L. O. attempted to leave, Nukapigak barred the door with a large piece of plywood, struck her, and stepped on her neck. According to Ms. O.'s testimony, Nukapigak raped her several times and cut her in the vaginal area with an object that she was unable to see. Eventually, Nukapigak passed out, at which point the victim located her clothes and walked to a nearby hospital. Upon her arrival there at approximately 10:00 p.m., members of the hospital staff called the police.

The pre-sentence report reflects that although Nukapigak remembered inviting L. O. to his home and having a few drinks, he denied any recollection of the events which occurred between 2:00 p.m. on December 2, 1975 and noon of the next day. In his testimony, he attributed blood stains on his bed to bleeding which occurred when he and his wife had engaged in intercourse a few days earlier.

Appellant was twenty-four years of age when he committed the acts leading to his conviction. He had maintained a good employment record as a carpenter in Point Lay and had left his job in October 1975 to accompany his wife to Barrow due to complications with her pregnancy. Nukapigak's pre-sentence report reveals that he is ordinarily a sober, responsible person. However, he has a history of alcohol abuse and associated "blackouts" and while under the influence of alcohol has engaged in anti-social behavior.

The report of the psychiatrist, Dr. Harold South, after relating Nukapigak's history of alcohol abuse and his professed lack of recall of occasions on which he has engaged in violence toward others, concluded:

.   .   .   Mr. Nukapigak states that he does not consider himself to have any aggressive, hostile, violent, or sadistic impulses, but in my opinion, he does have. His denial that he has these, and his professed inability to recall the instances in which he has acted on them, in my opinion make him a more dangerous person.

The pre-sentence report indicates that appellant had three prior misdemeanor convictions, for which he was given light or sus-

pended sentences. In 1973 he was convicted of assault after striking and kicking Amy, the woman who was later to become his wife. Later that year, he was found guilty of being in possession of a firearm while intoxicated. In 1974, Nukapigak was again convicted of committing assault and battery on his wife.

Finally, the pre-sentence report included the contents of probation officer Gail Frank's conversations with Nukapigak's friends, relatives, and members of the village council of Point Lay, Nukapigak's home. The comments of these residents of Point Lay were consistent in their focus on Nukapigak's drinking problem and its attendant outbursts of violent behavior. Characteristic of these comments were the views expressed by Don Neakok and Warren and Corcus Neakok.

DON NEAKOK: When he's drunk he beats his wife. He raped A., B. N.'s wife. He treats the kids okay. He is ambitious and hunts occasionally. He is not a problem as long as he is sober.

WARREN and CORCUS NEAKOK: When he's drinking he gets funny. He beat his wife, he hit B. N.'s wife A. and had intercourse with her in front of Amy's sons who were 9 and 12, when he comes home the kids stay away from home at other people's houses, he tried to rape his step-daughter . . ..

Amy, Nukapigak's wife, expressed doubt that her husband had committed the acts with which he was charged. However, she confirmed the stories of the Point Lay residents that Nukapigak had beaten her and had raped other women when he was drunk.

The trial court considered the entire pre-sentence report in reaching its sentencing decision, including the comments of the residents of Point Lay.

I can't say the worst—you're the worst type of offender in your class, but you're certainly not the least, either, because there has been a history here, dictated in this report, of a failure to respect other peoples' persons and their rights. This is your first felony conviction. I'm not so concerned on whether it's a first felony conviction or not; I'm concerned with the types of convictions that are behind it and the type of actions that seem to be indicated in this report.

*    *    *    *    *    *

You are a dangerous offender when you drink; you are dangerous to other people . . .. You're extremely intelligent. You have a list of accomplishments behind you. You have a list of people who are supportive of you. There are also people who are not supportive of you; who do not trust you because of your drinking and because of the past conduct.

Although appellant has framed three separate issues on appeal, all of his arguments relate to the trial court's consideration of the unfavorable comments by Point Lay residents contained in the pre-sentence report.[1] In his brief, appellant bases his argument that his sentence was excessive totally on the premise that he "was sentenced for acts not proven or even charged." Appellant objects to the consideration by the trial judge of the unfavorable comments on two grounds. First, he characterizes them as hearsay statements and claims that their use denied him of his right to confront and cross-examine the adverse witnesses. Second, he claims that stories of his alleged rape and abuse of women while drinking constituted the type of "police contacts"

---

1. Rule 32(c)(2), Alaska Rules of Criminal Procedure, provides:

(2) *Report.* The report of the pre-sentence investigation shall contain any prior criminal conviction including a finding of delinquency of the defendant and such information about his characteristics, his financial condition, and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the court. No record of arrest or other police contacts shall be included in the report. The report shall be made available to the state's attorney and to the defendant's attorney in all cases and to the defendant unless the court enters on the record findings of reasons why the report would prove detrimental to the rehabilitation of the defendant or safety of the public.

which should not have been included in the pre-sentence report nor been relied upon by the trial court in its sentencing decision.

█ While we agree with appellant that a bare accusation or the mere fact of an arrest is not sufficient to support a conclusion that a defendant has previously engaged in criminal conduct, we are equally convinced that the sentencing judge should be entitled to consider *verified*[2] instances of past anti-social behavior, even though the defendant was not convicted or even charged with the same.

In *Adams v. State,* 521 P.2d 516, 519 (Alaska 1974), we confronted this issue. There, the prosecutor brought to the superior court's attention facts concerning two offenses for which the defendant had been indicted and further referred to two other possible cases which had not yet been filed against the defendant. In discussing the two indictments, the prosecutor indicated his willingness to support his allegations with testimony from witnesses present in the courtroom. We held that reference to the additional offenses was not error, finding the following language from *Hixon v. State,* 508 P.2d 526, 527 n.1 (Alaska 1973) to be controlling:

> *Galaktionoff v. State* (citation omitted) is not intended to restrict the trial court from using verified information concerning additional crimes where the defendant is informed of the information and given an opportunity to explain or admit it.[3]

Thus, appellant's argument fails if, as we specified in *Hixon* and *Adams,* the information relied on by the sentencing judge was sufficiently verified to appear trustworthy and the defendant was given the opportunity to deny it or present contrary evidence of his own.

█ We have no trouble concluding that the information gathered in Point Lay by probation officer Frank was trustworthy. The report related, in considerable detail, conversations with numerous residents of Point Lay acquainted with Nukapigak; the consistency of the various versions of Nukapigak's actions when drunk contributed greatly to the report's credibility. Also Nukapigak was made aware of the information and given an opportunity to deny it or offer evidence in rebuttal.[4] Both the defendant and his attorney were in a position to challenge the accuracy of the statements made, thus causing further inquiry by the sentencing judge, but chose not to do so. Under these circumstances we find no error.

Appellant's second contention is that in partially basing its sentencing decision on stories of Nukapigak's earlier rapes and displays of violence when drunk, the trial court was in effect considering unexplained police contacts, since the defendant had never been charged or convicted of the earlier offenses. However, we have previously distinguished verified reports of anti-social behavior which have a bearing on the crime for which the defendant is being sentenced from the bare accusations or unexplained arrests which constitute unexplained police contacts. In *Burleson v. State,* 543 P.2d 1195 (Alaska 1975), the pre-sentence report contained rather detailed references to two previous incidents, one in which the defendant, convicted of hiring someone to maim his wife with acid, had assaulted his wife, and another in which he had forcibly entered her home in violation of a restraining order. Although the illegal entry resulted in no charges and the assault resulted only in an arrest with no conviction, we held that these incidents were properly considered by the trial judge.

---

2. By "verified" we mean corroborated or substantiated by supporting data or information.

3. We recently used this reasoning in *Layland v. State,* 549 P.2d 1182 (Alaska 1976) where we allowed the sentencing judge to consider the facts surrounding an arrest which occurred subsequent to the offense for which the defendant was being sentenced.

4. Nukapigak and his attorney were not only aware of the statements of the Point Lay residents contained in the pre-sentence report, Nukapigak's attorney actually referred to one of them in his argument that his client be put into an "Antibuse" alcohol rehabilitation program.

The incidents here referred to had some bearing on the crime committed, and Mr. Burleson had adequate opportunity to explain or deny the incidents. We are not presented with a case of unexplained police contacts or records of arrest. We have previously condemned reliance on such materials. (footnote omitted) 543 P.2d at 1203.

■ Consideration of such previous instances of anti-social behavior as were included in Nukapigak's pre-sentence report is essential for a trial court in its analysis of the sentencing goals which we enunciated in *State v. Chaney*, 477 P.2d 441 (Alaska 1970).[5] This is especially true in determining the need to isolate the dangerous criminal and in arriving at a realistic assessment of the time required for the defendant's rehabilitation. The best single indication of what a man will do in the future is his past record of behavior, criminal or otherwise. No one would seriously suggest that the sentencing court should ignore a man's work history, his educational record, or other such data, whether good or bad, in deciding upon a proper sentence. A sentencing judge should not be required to close his eyes to instances of anti-social behavior, assuming that they can be verified by reliable information, simply because those same acts may be contrary to a criminal statute and there has not been a conviction. The significance of Nukapigak's previous acts of drunken violence is not that they are crimes, but that they provide some indication of how he will behave in the future. We fail to see how we can seriously discuss the goals of sentencing without taking into account such information as the trial court in this case did. Accordingly, the trial court's sentence is AFFIRMED.

**5.** In *Chaney*, we specified the proper sentencing goals for the trial court to consider in determining an appropriate sentence. These include rehabilitation of the offender, isolation of the offender in order to protect the public, deterrence of the offender and of other members of the community who might possess similar criminal tendencies, and reaffirmation of societal norms. 477 P.2d at 444.