Richard Paul PEARS, Petitioner,

v.

STATE of Alaska, Respondent.

No. S–208.

Supreme Court of Alaska.

May 3, 1985.

Fleur Roberts, Law Offices of Dick L. Madson, Fairbanks, for petitioner.

Charles M. Merriner, Asst. Atty. Gen., Anchorage, Norman C. Gorsuch, Atty. Gen., Juneau, for respondent.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

Richard Pears, driving while intoxicated and after being warned by a police officer not to drive, sped through two red lights and collided with another vehicle, killing two of its occupants and injuring another. Pears was convicted of two counts of second degree murder under AS 11.41.-

110(a)(2)[1] and one count of assault in the second degree under AS 11.41.210(a)(2).[2] He was sentenced to serve concurrent prison terms of twenty years for the murders and five years for the assault.[3] His convictions and sentence were affirmed by the court of appeals, *Pears v. State*, 672 P.2d 903 (Alaska App.1983). We granted Pears's petition for hearing limited to the question whether his sentence is excessive. We conclude that it is.

At the time of the accident, Pears was twenty years old and had a steady job as a delivery driver. He had no felony convictions and no convictions for driving while intoxicated or reckless driving. In the three year period before the accident, he had committed seven moving traffic violations and was convicted of leaving the scene of an accident for colliding with a vehicle in a parking lot and then driving away.

In passing sentence, the court placed primary emphasis on the need to reaffirm societal norms and to deter others who might be inclined to engage in similar conduct. The court also noted that Pears required a substantial period of time in confinement in order to be rehabilitated.[4]

1. AS 11.41.110(a) provides:
 Murder in the second degree. (a) A person commits the crime of murder in the second degree if
 (1) with intent to cause serious physical injury to another person or knowing that the conduct is substantially certain to cause death or serious physical injury to another person, the person causes the death of any person;
 (2) the person intentionally performs an act that results in the death of another person under circumstances manifesting an extreme indifference to the value of human life; or
 (3) acting either alone or with one or more persons, the person commits or attempts to commit arson in the first degree, kidnapping, sexual assault in the first degree under AS 11.41.410(a)(1) or (2), sexual assault in the second degree, burglary in the first degree, escape in the first or second degree, or robbery in any degree and, in the course of or in furtherance of that crime, or in immediate flight from that crime, any person causes the death of a person other than one of the participants.

2. AS 11.41.210(a) provides:
 Assault in the second degree. (a) A person commits the crime of assault in the second degree if
 (1) with intent to cause physical injury to another person, that person causes physical injury to another person by means of a dangerous instrument; or
 (2) that person recklessly causes serious physical injury to another person.

3. Pears's driver's license was also permanently revoked.

4. At the sentencing hearing, Judge Hodges stated:
 Thank you, Mr. Pears. As with any sentencing, the Court has a number of factors to take into account. The Court notes at the outset that since the cases which were cited to the Court by both the State and by the defendant, the Legislature has changed—has substantially changed the Criminal Code and has changed what is commonly referred to and what most people know as second degree murder to a different culpability than the old second degree murder statute. Under the new statute, the conduct of the defendant in this case, at least as far as the jury was concerned, fit within that statute. The Legislature has seen fit to make that particular offense. or guilt of that offense punishable by a maximum penalty of 99 years. The other cases which were cited to the Court, the maximum penalty was 20 years. Certainly the Court must take the legislative intent into account in fashioning appropriate sentence. The other offense being a class B felony, carries a maximum of 10 years, the assault. The Court must take into account the probability of successful rehabilitation of Mr. Pears into a non-criminal member of society. I don't think there's any question that Mr. Pears himself has learned a great deal from the unfortunate and tragic accident that occurred on the day in question. The Court is not entirely convinced, however, that Mr. Pears, based on his prior conduct, is totally rehabilitated at this time concerning his operating a motor vehicle. The numerous letters of recommendation as to Mr. Pears's character would indicate to the Court Mr. Pears has somewhat of a split personality when he gets behind the wheel of an automobile, particularly when he's been *driving*, (sic) he's a different person than when he is not behind the wheel and not drinking. Almost without exception, the letters that were received indicate that he's the average type young person who lives in Fairbanks, no worse or no better than a number of people. However, his past driving record—and although, as Mr. Madson said, it does stretch over a period of time, there aren't any particularly serious offenses, certainly the numerous traffic violations that he's had do not indicate the normal type driv-

Pears is the first person in this state to be convicted of murder for an accidental motor vehicle homicide. Prior to the passage of AS 11.41.110(a) in 1978,[5]

er. The Court must also fashion a sentence which will prevent and deter Mr. Pears from similar conduct in the future and fashion a sentence which will deter other people in the community who may be similarly inclined. There is no question that our legislature and the people are extremely upset about the number of driving offenses involving alcohol. The Legislature has increasingly indicated by the laws they pass that they want to be more strict about people who drive and drink. The Court must take into account that in fashioning appropriate sentence. The Court also must reaffirm societal norms that the type of conduct exhibited on the day in question will not be tolerated. Mr. Pears, on the day in question, as far as the Court's concerned, can be characterized if not the the worst offender within the class of vehicular homicide, certainly within the top four or five percent. It is his first felony conviction; he is of a young age; the Court certainly will not penalize him for not admitting the offense of second degree murder, particularly when there was an indication that he would have entered a plea to a manslaughter-type offense. The Court certainly would not penalize him for that. Certainly, since the outset, Mr. Pears has been willing to accept his guilt of the offense but not to the degree with which he was found guilty by the jury. Certainly, it is a very serious offense; among the most serious offenses. Anyone who operates a motor vehicle in the state of Alaska under the circumstances which Mr. Pears operated on the day in question can be characterized as both a serious and dangerous offender. He's certainly not a professional criminal. The Court, in fashioning the sentence, has had an opportunity to reflect and think about this particular case for a period of time, both prior to and subsequent to the jury verdict of guilty. The Court would note as to the offense itself, this case is somewhat unique in cases of the normal drunk driver. Mr. Pears has a fairly lengthy record of motor vehicle [offenses] expenses. Recently, a speeding ticket—or not too long prior to this, a speeding ticket and leaving the scene of an accident. On the particular day in question, not only was Mr. Pears intoxicated with a .17 blood alcohol, which is substantially over the legal limit as set by the Legislature, Mr. Pears was warned shortly prior to the accident in question not to operate his motor vehicle because of his drinking. A person would think when warned by the police, even if they were going to drive, they would use extra special care in the operation of the motor vehicle. What distinguishes this case from a motor vehicle operator who was intoxicated, driving in a fairly acceptable fashion and unfortunately has an accident, is that Mr. Pears's driving on the question, according to the testimony as presented to the jury, operated his motor vehicle in a very gross disregard of the safety of himself, the passenger at one particular time and the safety of others. Prior to dropping off the passenger, there was testimony concerning his almost running a red light, running a stop sign and driving certainly not in an acceptable manner. After the passenger was let out, there was testimony, uncontroverted testimony, testimony which the Court believes and the jury apparently believed, that not too far prior to the accident scene, Mr. Pears, at somewhat over the speed limit, ran a red light, passing two cars who were stopped, then at the time of the event in question, was in the process of passing a car and running another red light. The Court finds, based on those considerations, coupled with the drinking, it's not a normal operating a motor vehicle case. This shows a total disregard for the rights and safety of other people who operate motor vehicles on the highway. This Court disagrees with Mr. Madson that this case should be considered as the other cases. This Court is willing to follow the recommendation of the State. This Court would be inclined to impose a greater penalty than recommended by the State; however, the Court is willing to go along with the recommendation of the State. Based on the consideration which the Court has indicated in the sentencing guidelines, the Court taking into account at this particular time that Mr. Pears—the Court does not feel that Mr. Pears is totally rehabilitated. The Court feels that Mr. Pears needs a substantial period of time in confinement to effectuate rehabilitation, and primarily placing the emphasis on reaffirming societal norms and impressing upon other people who may be similarly inclined, that this type of conduct will not be tolerated, it's going to impose 20 years on Count I, 20 years on Count II, concurrent. Five years on Count III, concurrent. Any questions about the sentence? Oh, Mr. Pear's privilege to operate a motor vehicle is revoked permanently. Any questions about the sentence?

5. *See* note 1 *supra*. Under AS 11.41.110 an unintentional homicide caused by reckless behavior can be second degree murder if the reckless conduct manifests "an extreme indifference to the value of human life." Under AS 11.41.120 an unintentional reckless homicide may also be manslaughter. Recklessness is defined as the conscious disregard of a substantial and unjustifiable risk. Thus, one who kills another unintentionally may be guilty of murder in the second degree if he acts under circumstances manifesting an extreme indifference to the value of human life or of manslaughter if he acts under circumstances manifesting a substantial indifference to the value of human life.

homicides caused by reckless behavior were categorized as manslaughter.[6] Second degree murder required, among other things, a specific intent to kill.[7]

In an effort to curb unjustifiable sentencing disparities and to determine whether a challenged sentence is excessive, we have frequently compared sentences imposed in prior cases involving similar offenses to that imposed in the case under review.[8] We have recognized that,

> [s]entencing is an individualized process, and all persons committing the same crime should not necessarily receive like sentences. Yet, theoretically, if two persons of identical background commit the same offense, they should receive like punishment. Sentencing, however, is not an exact science, and disparities will occur. The question for this court is whether a disparity is so irrational as to be "unjustifiable."

*Burleson v. State,* 543 P.2d 1195, 1202 (Alaska 1975).

**6.** Former AS 11.15.080; former AS 11.15.040. Both were repealed by ch. 166 § 21 SLA 1978, effective January 1, 1980. Sentences for manslaughter included incarceration of no less than one, nor more than 20 years.

**7.** Former AS 11.15.030; *Gipson v. State,* 609 P.2d 1038, 1040 (Alaska 1980).

**8.** *E.g., Page v. State,* 657 P.2d 850, 854–55 (Alaska App.1983); *Troyer v. State,* 614 P.2d 313, 320–21 (Alaska 1980); *Johnson v. State,* 607 P.2d 944, 946–48 (Alaska 1980); *Padie v. State,* 594 P.2d 50, 61 (Alaska 1979).

According to the Task Force on Appellate Review of Sentences of the American Bar Association, among the general goals of sentence review is facilitation of "the possible rehabilitation of an offender by reducing manifest and unwarranted inequalities among the sentences of comparable offenders." ABA Standards for Criminal Justice, Appellate Review of Sentences § 20–1.2(c) at 20.14 (Approved Draft 1978).

**9.** There are as yet few published opinions involving sentencing appeals under AS 11.41.-110(a)(2). *Cf. Minchow v. State,* 670 P.2d 719 (Alaska App.1983) (defendant had a history of nonfelony assaults; after a fight the defendant returned and shot the victim; 30 year sentence imposed); *Page v. State,* 657 P.2d 850 (Alaska App.1983) (second degree murder but originally charged as first degree—stabbing, tying up vic-

 In this case, the question exists whether we should compare Pears's sentence with prior manslaughter sentences involving drunken drivers or with second degree murder sentences. We believe that a comparison with prior manslaughter sentences is appropriate for the following reasons.

First, Pears's conduct is generally similar to that of other drunken drivers who have recklessly caused others to die.

Second, Pears's conduct is not comparable to that reviewed in sentence appeals under the new second degree murder statute.[9]

 Third, when the legislature enacted the Alaska Revised Criminal Code in 1978, it adopted in large measure the Model Penal Code.[10] This enactment, resulting in the inclusion of reckless homicide as second degree murder, was not in response to public outcry for increased penalties for reckless vehicular homicide. In fact, when the legislature redefined second degree murder

tim, leaving victim to die; 99 year sentence imposed); *Faulkenberry v. State,* 649 P.2d 951 (Alaska App.1982) (first degree arson and second degree homicide; 19-year-old pyromaniac with longstanding compulsion to set fires; 60 year sentence imposed).

**10.** *See Neitzel v. State,* 655 P.2d 325, 327 (Alaska App.1982):

A number of common law concepts underwent substantial modification in the American Law Institute's Model Penal Code (proposed official draft) which was published in 1962 (hereafter referred to as Model Penal Code). The Model Penal Code in turn underwent modification in the enactment of the New York Penal Code of 1965, at the hands of the Subcommission on Criminal Law which published its Tentative Draft in 1977, in the Revised Code enacted in 1978, and in the additional amendments added to our code in 1980. Nevertheless, the Model Penal Code is the foundation upon which our code rests and a researcher interested in discovering the meaning of a given Alaskan criminal statute must begin with the Model Penal Code and its comments and follow the evolution of the statute in question through the New York Penal Code of 1965 and the Alaska Tentative Draft to its place in the Revised Code. *See also* Commentary on the Alaska Revised Criminal Code, 2 Senate Journal Supplement No. 47 (June 12, 1978).

to include what previously had been manslaughter, it lowered the mandatory minimum sentence from fifteen years to five years.[11] We therefore find no legislative intent to specifically upgrade the penalties given for reckless vehicular homicide by the 1978 enactment of the revised code.

■ Fourth, it is not clear, in view of the lowering of the mandatory minimum sentence from fifteen to five years, whether a sentence of twenty to twenty-five years imposed for second degree murder under the prior statute will remain "typical" under the current statute.[12] Both the lowering of the minimum term from fifteen to five years and the inclusion of reckless homicide as second degree murder may alter the "typical sentence."

Comparing Pears's sentence with prior manslaughter sentences, we note that the most severe sentence imposed and appealed for manslaughter committed by a drunken driver is found in *Sandvik v. State*, 564 P.2d 20 (Alaska 1977). The defendant was sentenced to prison for twenty years with eight years suspended. The defendant had six prior convictions for operating a motor vehicle while intoxicated and had failed to stop after the accident. Other lengthy sentences in manslaughter cases involving drunken drivers are reflected in *Rosendahl v. State*, 591 P.2d 538 (Alaska 1979) (ten year sentence for a hit and run driver who had two prior convictions for driving while intoxicated); *Layland v. State*, 549 P.2d 1182 (Alaska 1976) (eight year sentence, two other convictions for driving while intoxicated); *Gullard v. State*, 497 P.2d 93 (Alaska 1972) (ten year sentence for nineteen year old defendant who had two driving while intoxicated convictions prior to sentencing and who had caused an accident killing four people).[13]

■ While Pears's conduct is generally comparable to that of the defendants in the above cases, and his record of prior offenses is better than all of them, his sentence is substantially greater than any imposed. This disparity is, in our view, unjustifiable. It cannot be explained by the increase in maximum sentences available that accompanied the 1978 redefinition of second degree murder, because none of the sentences in the above cases imposed an

---

**11.** Former AS 11.15.030; AS 12.55.125(b).

**12.** In *Page v. State*, 657 P.2d 850, 855 (Alaska App.1983), the court of appeals stated:

> A review of the sentences for second degree murder considered by the supreme court and this court since 1970 indicate that the typical sentence is twenty to twenty-five years. It is possible that the reported cases overstate sentences, since someone receiving less than twenty years may not be strongly motivated to appeal. Twenty years is therefore a proper benchmark to measure sentences for this crime.... Obviously, a benchmark sentence can only be a guide, not a rule....

Virtually all the sentences reviewed by the court of appeals in establishing this benchmark were imposed prior to the January 1, 1980 effective date of the current statute. *Id.* at 854–55. The court of appeals relied on the twenty year benchmark language of *Page* in reviewing Pears's sentence. *Pears v. State*, 672 P.2d 903, 912 (Alaska App.1983).

**13.** Substantial sentences were imposed in *Clemans v. State*, 680 P.2d 1179 (Alaska App.1984) (eight years with two suspended, two deaths, court noted extreme recklessness of defendant's conduct, no prior driving while intoxicated convictions); *Godwin v. State*, 554 P.2d 453 (Alaska 1976) (ten years with five suspended, no prior driving while intoxicated convictions, but several speeding tickets, reckless and negligent driving convictions); and *Bishop v. State*, 573 P.2d 856 (Alaska 1978) (seven and one-half years with two suspended, two deaths, two prior driving while intoxicated convictions and a ticket for engaging in a speed contest earlier on the day of the accident).

At the most lenient end of the scale are cases such as *State v. Lamebull*, 653 P.2d 1060 (Alaska App.1982), where the defendant received a five year suspended sentence with no incarceration. The defendant had no prior driving while intoxicated convictions but had accumulated six speeding convictions. The court of appeals concluded that at least one year's actual incarceration should have been imposed. In *State v. Lupro*, 630 P.2d 18 (Alaska App.1981), the defendant was also given a sentence that did not involve incarceration. The court of appeals held that the term of incarceration should have been at least three years' in length. The defendant was a hit and run driver, who had lied about his involvement in the accident; he had no prior record. In *Pena v. State*, 664 P.2d 169 (Alaska App.1983), the defendant was sentenced to three years' imprisonment with all but nine months suspended.

unsuspended term of the twenty year maximum then available.

The objectives of sentencing were enunciated in *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970), as follows:

> [R]ehabilitation of the offender into a non-criminal member of society, isolation of the offender from society to prevent criminal conduct during the period of confinement, deterrence of the offender himself after his release from confinement or other penological treatment, as well as deterrence of other members of the community who might possess tendencies toward criminal conduct similar to that of the offender, and community condemnation of the individual offender, or in other words, reaffirmation of societal norms for the purpose of maintaining respect for the norms themselves.[14]

(Footnote omitted). In our view, Pears's sentence of twenty years exceeds that which is necessary to meet these goals.

 The trial court found that Pears needed a substantial period of time in prison in order to effect his rehabilitation. This rationale cannot be seen as a justification for a twenty year sentence for two reasons. First, in view of Pears's relatively good past record, his prospects for rehabilitation would seem to be promising. He has no prior convictions for driving while intoxicated or other serious offenses in contrast to the defendants in *Sandvik, Rosendahl, Layland,* and *Gullard.* Second, while rehabilitation is a legitimate objective of sentencing, it is difficult to view rehabilitation as a justification for a long prison term. There is a growing consensus that rehabilitation of an offender, as distinct from his deterrence, should not serve as a basis for extending a prison term or selecting imprisonment as a sentence. *See* ABA Standards for Criminal Justice, Sentencing Alternatives and Procedures § 18–2.2 at 18.57 (Approved Draft 1979). "The view of rehabilitation taken by these standards involves a critical distinction: rehabilitation is a proper *goal* of corrections but an improper *justification* for it. It is desirable

that offenders have access to treatment but undesirable that they be sentenced to prison for treatment." (Emphasis added) *Id.* § 18–2.6, at 18.141. *See also United States v. Bergman*, 416 F.Supp. 496, 498–99 (S.D.N.Y.1976):

> The court agrees that this defendant should not be sent to prison for *"rehabilitation."* Apart from the patent inappositeness of the concept to this individual, this court shares the growing understanding that no one should ever be sent to prison *for rehabilitation.* That is to say, nobody who would not otherwise be locked up should suffer that fate on the incongruous premise that it will be good for him or her. Imprisonment is punishment. Facing the simple reality should help us to be civilized. It is less agreeable to confine someone when we deem it an affliction rather than a benefaction. If someone must be imprisoned—for other, valid reasons—we should seek to make rehabilitation resources available to him or her. But the goal of rehabilitation cannot fairly serve in itself as grounds for the sentence to confinement.

(Emphasis in original, footnotes omitted).

 Another *Chaney* criterion, isolation of the offender to prevent further criminal conduct, was a consideration properly taken into account by the trial judge. But again, as with the objective of rehabilitation, isolation cannot be seen as a justification for imprisoning Pears for twenty years. His relatively good prior record suggests that there is not a high risk that Pears will again commit a crime of this nature.

The trial court strongly relied on the objectives of deterrence of Pears and of other members of the community and of reaffirming societal norms. These are also appropriate considerations. It is, however, difficult to say what sentence is needed to satisfy them in this case. In our view a substantially less severe sentence would serve these objectives as well as that which was imposed.

---

**14.** The *Chaney* criteria have been incorporated in the Revised Criminal Code. AS 12.55.005.

Two considerations lend support to this conclusion. The first is the "principle of parsimony." The defendant's liberty should be restrained only to the minimum extent necessary to achieve the objectives of sentencing. The ABA Standards express the principle this way: "The sentence imposed in each case should call for the minimum sanction which is consistent with the protection of the public and the gravity of the crime." ABA Standards for Criminal Justice, Sentencing Alternatives and Procedures § 18–2.2(a) at 18.57 (Approved Draft 1979). The second is in the nature of a caution. The easy assumption that the benefits of deterrence will continue to increase with the severity of a sentence is not necessarily true: "Our understanding of general deterrence is incomplete, but the fragmentary evidence available tends not to conform to any simple model under which sentences of high severity can always be justified on the grounds that they yield greater preventive benefits." ABA Standards for Criminal Justice, Sentencing Alternatives and Procedures § 18–2.5 commentary at 18.120 (Approved Draft 1979).

We conclude that the sentence is clearly mistaken and direct that this case be RE-MANDED to the superior court so that a sentence consistent with this opinion may be imposed.[15]

BURKE, Justice, dissenting.

Since I am unable to say that the court was clearly mistaken, I cannot agree that the trial court erred in the length of its sentence. *McClain v. State*, 519 P.2d 811 (Alaska 1974). I, therefore, dissent.

COMPTON, Justice, dissenting.

I concur in the view expressed by Justice Burke. I have, however, some additional observations.

First, the court questions whether we ought to "compare Pears's sentence with prior manslaughter sentences involving drunken drivers or with second degree murder sentences." *Opinion* at 1202. This question tacitly assumes we ought to do one or the other. In my view, we must first ask whether either comparison is appropriate. I think not.

This is not a situation in which the legislature has merely renominated an offense, retaining the same elements previously prescribed. Rather, the crime has been redefined. As the court points out, under the prior statutes a specific intent to kill was required to convict on a charge of second degree murder, while merely reckless behavior sufficed to convict for manslaughter. *Opinion* at 1201–1202. Presumably Pears would have been tried only for manslaughter were the prior statutes in effect. The statute under which Pears was convicted, however, requires a finding that his conduct took place "under circumstances manifesting an extreme indifference to the value of human life...." AS 11.41.-110(a)(2). Since this qualitative judgment is a stranger to both former statutes, resort to comparisons with them is not useful.[1]

Since this case is one of first impression,[2] it ought to be so judged. With regard to the alcohol-abusing automobile driver, this

---

**15.** The author of this opinion and Justice Moore believe that the maximum sentence imposed should not exceed ten years' imprisonment. Chief Justice Rabinowitz declines to make a specific recommendation.

**1.** Another reason comparisons are not useful is that the issue in cases arising under the repealed sections is not what an appropriate maximum sentence could be; rather, the question is whether the sentence imposed is excessive. The fact that a sentence is not excessive does not mean that a greater sentence might not have been appropriate.

**2.** The court cites three cases involving second degree murder sentences under the new statute, all decided by the court of appeals, remarking that "Pears's conduct is not comparable to that reviewed in sentence appeals under the new second degree murder statute." *Opinion* at 1202. However, the defendant in *Minchow v. State*, 670 P.2d 719 (Alaska App.1983), *was* convicted under AS 11.41.110(a)(2).

I agree with the statement quoted above in that in none of the cited cases was more than one person killed, and in none of them was the murder weapon an automobile.

**1206**

court in *Layland v. State*, 549 P.2d 1182 (Alaska 1976), remarked as follows:

> Recent statistics indicate that thousands of innocent people are killed or seriously injured nationwide each year by automobile drivers who take to the road in spite of the fact that they are highly intoxicated. Unlike many crimes, the victim has no way of protecting himself. While vehicular homicide does not require a criminal intent, the fact that a loss of life is involved compels us to consider it among the most serious offenses. The unique nature of the offense mandates that the trial court, in fashioning a sentence, place heavy emphasis on societal condemnation of the conduct and the need to protect society.

*Id.* at 1184. What was said in 1976 is no less true today. I think it fair to say that in the interim public awareness of and attitude toward the problems created by the alcohol-abusing automobile driver have altered significantly. So has the law, for the jury was required to find that Pears' conduct evinced extreme indifference to human life, an element significantly more culpable than that required under the former manslaughter statute.

The court notes Judge Hodges' strong reliance on deterrence of Pears and others, and reaffirmation of societal norms in fashioning Pears' sentence. *Opinion* at 1205. While it suggests that perhaps deterrence ought to be generally deemphasized, as well as deemphasized in this case, it neglects entirely the issue of societal norms on which *Layland* requires trial courts to place heavy emphasis. I agree that Judge Hodges strongly relied on reaffirmation of societal norms in fashioning this sentence, yet his judgment is being afforded little weight. His careful balancing of criteria which he is required to consider, coupled with this court's pronouncement in *Layland* when the law required less culpability to convict for a lesser crime, lead me to conclude that the sentence imposed for the crime charged was not clearly mistaken.