Charles S. RHODES, Appellant,

v.

STATE of Alaska, Appellee.

No. A–857.

Court of Appeals of Alaska.

April 18, 1986.

Joseph A. Kalamarides, Kalamarides & MacMillan, Anchorage, for appellant.

W.H. Hawley, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Charles Rhodes was convicted, after a bench trial, of assault in the first degree, AS 11.41.200(a)(3). The incident for which Rhodes was indicted involved his six-week old daughter Amanda. Amanda suffered a skull fracture while in Rhodes' care. On March 8, 1984, Rhodes' wife, Deborah, went to work leaving Rhodes in sole care of Amanda. Amanda was fussy due to a cold and a feverish reaction to a shot she received the previous day. Deborah was concerned about Amanda so she called home several times; during the calls she could hear Amanda crying in the background. Rhodes was apparently attempting to calm Amanda by feeding her, changing her, and walking with her. At approximately 8:00 p.m. Deborah again called home. She could hear the baby crying loudly in the background. In response to her probing about the baby's health, Rhodes told her that the baby's head was swollen.

Deborah left work, returned home and took Amanda to the hospital, where Amanda was subsequently diagnosed as having a skull fracture. When Deborah confronted Rhodes with the baby's condition, Rhodes

told her that he had thrown Amanda on the waterbed.

During a police interview the next day, Rhodes again stated that he had thrown Amanda on the bed. However, unlike his statement to Deborah, he stated that after Amanda vomited on him he "just went ... blank."

In addition to Rhodes' statement concerning what happened to Amanda, the police investigator also inquired into the death of Rhodes' first child, Ryan. Ryan died when he was five weeks old of a skull fracture. Rhodes was alone with Ryan when he died.

At trial, Rhodes presented expert witnesses who testified about his psychological state. The doctors testified that Rhodes has difficulty with impulse control. In one expert's opinion, Rhodes had acted without thinking because his rages were below the control of the cerebral cortex. Therefore, the doctor surmised that Rhodes did not intend to injure Amanda. At trial, Rhodes denied having any memory of the incident, and explained his statements to his wife and the police investigators as being what he surmised had happened.

At the close of Rhodes' bench trial, Judge S.J. Buckalew found Rhodes guilty of assault in the first degree. Judge Buckalew sentenced Rhodes to a fifteen-year presumptive term. Judge Buckalew also imposed a fine of $40,000, but ordered the fine suspended if Rhodes would establish a $20,000 trust fund for Amanda. Rhodes appeals his conviction and sentence to this court. We affirm Rhodes' conviction but reverse his sentence.

## EVIDENCE OF RYAN RHODES' DEATH

Before trial, Rhodes filed a motion to exclude any mention at trial of the circumstances surrounding the death of Rhodes' first child, Ryan. Judge Buckalew ruled that evidence concerning Ryan's death would be admissible to show Rhodes' state of mind and his intent during his assault upon his daughter. Evidence Rule 404(b) provides:

> (b) *Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

We discussed the application of A.R.E. 404 in *Lerchenstein v. State*, 697 P.2d 312, 315–16 (Alaska App.1985), *petition for hearing granted*, (Alaska, June 25, 1985):

> The exclusionary provision of Evidence Rule 404(b) represents the "presumption in our law that the prejudicial effect of introducing a prior crime outweighs what probative value may exist with regard to propensity. No case by case balancing is permitted." When, however, a prior bad act is relevant to a material fact other than propensity, the court may admit the evidence if an Evidence Rule 403 balancing shows the evidence to be more probative than prejudicial. In making this balance, the Alaska Supreme Court has cautioned that "[i]f prior crimes were found admissible whenever offered to prove a fact classified as material to the prosecution's case, 'the underlying policy of protecting the accused against unfair prejudice ... [would] evaporate through the interstices of the classification.'" The trial court's inquiry, then, is twofold. First the court must determine that the evidence sought to be admitted has relevance apart from propensity. Second, the court must determine that the nonpropensity relevance outweighs the presumed highly prejudicial impact of the evidence. If there is no genuine nonpropensity relevance, the balancing step is never reached. [Citations omitted.]

In the instant case it appears to us that the evidence concerning Ryan Rhodes was admissible for a non-propensity purpose.[1]

---

1. This fact distinguishes Rhodes' case from *Harvey v. State*, 604 P.2d 586, 589–90 (Alaska 1979),

Rhodes was charged with assault in the first degree, AS 11.41.200(a)(3). That statute provides that "a person commits the crime of assault in the first degree if ... the person intentionally performs an act that results in serious physical injury to another under circumstances manifesting an extreme indifference to the value of human life." Rhodes' knowledge that Ryan died of a skull fracture was relevant to establish that in throwing Amanda down upon the bed Rhodes was particularly aware of the possibility that Amanda could receive a skull fracture and die from these actions. In addition Deborah Rhodes testified that she had asked Rhodes to be particularly careful of Amanda after what had happened to Ryan. The trial judge could reasonably conclude that evidence of Ryan's death tended to establish that Rhodes acted under circumstances "manifesting an extreme indifference to human life." *See* AS 11.41.200(a)(3).

There still remains the question of whether the probative value of this testimony outweighs the danger of unfair prejudice. *See* A.R.E. 403. We note, however, Rhodes' trial was a court trial, and Judge Buckalew indicated on the record that he would consider the testimony only on the issue of Rhodes' state of mind. Rhodes never asked Judge Buckalew to make specific findings, and there is no indication that Judge Buckalew used the testimony concerning Ryan Rhodes' death in any way other than for the limited non-propensity purpose for which this testimony was introduced. *See Price v. State,* 590 P.2d 419, 420 (Alaska 1979) (admission of other crimes evidence has minimal prejudicial effect when case is tried to court). We conclude that the probative value of the evidence was not outweighed by the danger of unfair prejudice.

■ Rhodes next contends that there was insufficient evidence for Judge Buckalew to find him guilty of assault in the first degree. Rhodes bases his contention on

the testimony of two expert witnesses, Dr. Larry Bissey, a rehabilitationist, and Dr. Robert Alberts, a psychiatrist. These witnesses testified that in their opinion Rhodes acted impulsively and without thinking when he threw Amanda on the bed.

In deciding whether there was sufficient evidence presented for the court to find Rhodes guilty of assault in the first degree, we view the evidence in the light most favorable to the state and determine whether a reasonable person could find Rhodes guilty beyond a reasonable doubt. *See Dorman v. State,* 622 P.2d 448, 453 (Alaska 1981). In finding Rhodes guilty, Judge Buckalew relied primarily on statements which Rhodes made shortly after the offense. Rhodes had told his wife he threw Amanda on the bed. He told a police investigator he remembered losing control when Amanda vomited on him, and that he threw Amanda on the bed. Judge Buckalew could properly disregard the expert testimony and rely on the circumstances of the offense and upon Rhodes' statements, in concluding that Rhodes was guilty of assault in the first degree.

Rhodes next argues that there was insufficient evidence for Judge Buckalew to find that Rhodes acted with "extreme indifference to the value of human life," as required under AS 11.41.200(a)(3). Rhodes contends that to act with extreme indifference to the value of human life, the defendant's acts must endanger more than one victim. Rhodes relies mainly on the case of *Longinotti v. People,* 46 Colo. 173, 102 P. 165 (1909), which required "universal malice" in order to convict of extreme indifference murder. Universal malice was defined as acts "calculated to put the lives of many persons in jeopardy without being aimed at anyone in particular." *Longinotti,* 102 P. at 167.

Since *Longinotti,* Colorado has revised its statute and the Colorado court has held that the state does not have to prove uni-

---

where the supreme court concluded that a previous act of child abuse was not relevant for any non-propensity purpose.

versal malice in order to convict a defendant of extreme indifference murder. *People v. Jones*, 193 Colo. 250, 565 P.2d 1333, 1336 & n. 5, *appeal dismissed*, 434 U.S. 962, 98 S.Ct. 498, 54 L.Ed.2d 447 (1977). In *Neitzel v. State*, 655 P.2d 325 (Alaska App. 1982), we acknowledged but did not decide the issue of whether extreme indifference murder required conduct which threatened more than one potential victim. *Neitzel*, 655 P.2d at 338 n. 3.

■ Under AS 11.41.200(a)(3), a person commits the crime of assault in the first degree if he "intentionally performs an act that results in serious physical injury *to another* under circumstances manifesting extreme indifference to the value of human life." (emphasis added). The plain language of the statute indicates that conduct directed at a single victim would fall within the statute. Furthermore, the commentary to the Revised Criminal Code uses as examples of conduct manifesting an extreme indifference to the value of human life, the act of persuading a person to play "Russian roulette" and the act of shooting through a tent where the defendant did not know whether there is a person inside. 1978 Senate Journal Supp. No. 47 at 9–10, 15. The act of persuading a person to play Russian roulette implies one potential victim. The act of shooting into a tent could imply one or more victims. We conclude that under AS 11.41.200(a)(3), a person can act with extreme indifference to human life even if there is only one potential victim of his acts.

Rhodes raises another argument that there was insufficient evidence for Judge Buckalew to conclude that Rhodes acted "under circumstances manifesting an extreme indifference to human life." Again Rhodes points to the psychological testimony that he acted impulsively. However, as we have pointed out earlier, there was sufficient evidence for Judge Buckalew to find that Rhodes knowingly squeezed Amanda and threw her on the bed. Rhodes' wife testified that she had cautioned Rhodes to be particularly careful of Amanda in light of what had happened to Ryan. Judge Buckalew could properly have concluded that Rhodes' actions, in throwing Amanda forcefully on the bed, constituted "circumstances manifesting an extreme indifference to the value of human life."

## SENTENCE

Rhodes appeals his sentence of fifteen years' imprisonment. At the time of sentencing, Rhodes was twenty-six years old. His criminal record consisted only of two convictions for driving while intoxicated.

Assault in the first degree is a class A felony. As a first felony offender convicted of assault in the first degree, Rhodes was subject to a presumptive sentence of seven years. AS 12.55.125(c)(2). The presumptive sentence for a second felony offender is ten years, fifteen years for a third felony offender, and the maximum sentence is twenty years. AS 12.55.125(c). Thus, Rhodes' sentence was equal to the presumptive sentence for a third-felony offender. In imposing this sentence, Judge Buckalew placed considerable weight on his conclusion that Rhodes was responsible for the death of Ryan Rhodes.

■ Rhodes first contends that Judge Buckalew erred in not referring his case to the three-judge panel. Rhodes presented testimony at sentencing that he had begun psychological treatment and was making progress. Rhodes argued that the psychological evidence concerning his impulsiveness and his progress in treatment should be considered by a three-judge panel. Rhodes hoped that a three-judge panel would impose a sentence making him eligible for parole.

Under AS 12.55.165, a trial court may refer sentencing to a three-judge panel if it finds "by clear and convincing evidence that manifest injustice would result from failure to consider relevant aggravating or mitigating factors not specifically included in AS 12.55.155 or from imposition of the presumptive term...." We have held that a subjective test of "a sentence that would shock the conscience" characterizes the manifest injustice standard. *Lloyd v.*

*State*, 672 P.2d 152, 154 (Alaska App.1983). Judge Buckalew applied the *Lloyd* standard and found that Rhodes' eligibility for parole did not create manifest injustice. On this record, Judge Buckalew clearly did not err in reaching his conclusion that referral to a three-judge panel was not warranted.

Rhodes next argues that Judge Buckalew erred in imposing the sentence based in part on Judge Buckalew's conclusion that Rhodes was responsible for the death of his child, Ryan. Rhodes contends that the evidence connecting him with Ryan's death was not sufficiently verified so that Judge Buckalew could consider the incident in sentencing him. *See Nukapigak v. State*, 562 P.2d 697, 701 (Alaska 1977) *aff'd on rehearing*, 576 P.2d 982 (Alaska 1978).

There appears to be little question that Judge Buckalew found that Rhodes caused the death of Ryan Rhodes. Judge Buckalew clearly placed a great deal of weight on this factual finding in imposing sentence—a sentence which was equal to the presumptive sentence for a third felony offender. Rhodes' sentence was particularly severe for a first felony offender. *See Austin v. State*, 627 P.2d 657, 657–58 (Alaska App.1981) (a first felony offender should normally receive a more favorable sentence than the presumptive sentence for a second felony offender; rule should be violated only in an exceptional case).

The evidence connecting Rhodes with the death of Ryan Rhodes consisted mainly of Rhodes' statements that Ryan had died of a skull fracture from unknown causes at the age of five weeks. At sentencing, the prosecutor pointed out the similarities between the injuries which Amanda received

and those from which Ryan had died. He also pointed out that Ryan died of a skull fracture at the age of five weeks, and also that Rhodes was probably one of very few people who would have had access to Ryan at the time Ryan was injured. Finally, the prosecutor argued that because Rhodes had been convicted of assaulting Amanda, causing similar injuries, Judge Buckalew could conclude that Rhodes had assaulted Ryan.

 Given the fact that the court concluded beyond a reasonable doubt that Rhodes had assaulted Amanda, the evidence concerning Ryan Rhodes' death certainly raises grave suspicions that Rhodes assaulted and killed his first child. However, the evidence concerning whether Rhodes caused the death of Ryan Rhodes is far from conclusive. It appears to us that Judge Buckalew placed undue emphasis on this evidence in sentencing Rhodes—that Judge Buckalew sentenced Rhodes as though the prior assault and resulting death were conclusively established. Although we do not conclude that Judge Buckalew was required to completely disregard the evidence which suggested that Rhodes assaulted and killed Ryan Rhodes, we believe that the weaknesses of the evidence must be acknowledged. Considering these weaknesses, we conclude that the facts of this case cannot justify sentencing Rhodes, a first-felony offender, to a sentence which is equivalent to the presumptive sentence for a third-felony offender. We conclude that Rhodes should not receive a sentence in excess of ten years.[2] This is a lengthy sentence for a first-felony offender; ten years is equivalent to the

2. *See Pears v. State*, 698 P.2d 1198 (Alaska 1985). In *Pears*, the defendant was convicted of two counts of second-degree murder and one count of assault. Pears was convicted of murder on the theory that his actions manifested "an extreme indifference to the value of human life." Pears had been warned that he was intoxicated and not to drive. He disregarded the warnings and sped through two red lights and collided with another vehicle, causing two deaths and serious injuries to another person.

The trial court imposed a sentence of twenty years and we affirmed that sentence. *See Pears v. State*, 672 P.2d 903, 910–12 (Alaska App.1983). The supreme court reversed Pears' sentence. Two justices indicated that Pears' sentence should not exceed ten years. Two justices indicated that they would not find the twenty-year sentence clearly mistaken. Chief Justice Rabinowitz declined to make a specific sentencing recommendation. *Pears*, 698 P.2d at 1205 & n. 15.

presumptive sentence for a second-felony offender.[3]

The conviction is AFFIRMED. The sentence is VACATED and REMANDED.

SINGLETON, Judge, joined by BRYNER, Chief Judge, concurring.

I agree with the court's resolution of all issues. I believe a few further comments are necessary to explain our rejection of Rhodes' contention that evidence of Ryan Rhodes' death violated Alaska Rules of Evidence 403 and 404(b). Rhodes was convicted of assault in the first degree, on the theory that he intentionally performed an act that resulted in serious physical injury to another under circumstances manifesting extreme indifference to the value of human life. AS 11.41.200(a)(3). This theory of assault in the first degree is very similar to the theory of murder in the second degree discussed in *Neitzel v. State*, 655 P.2d 325 (Alaska App.1982), where we considered AS 11.41.110(a)(2) (a person commits the crime of murder in the second degree if ... the person intentionally performs an act that results in the death of another person under circumstances manifesting an extreme indifference to the value of human life). In *Neitzel*, we concluded that the state's *prima facie* case must establish that the defendant knowingly engaged in conduct which caused the death of another and, in light of the circumstances, was reckless to the point that he or she manifested an extreme indifference to the value of human life. 655 P.2d at 332–33. Applying that concept to this case, in order to convict Rhodes, the state had to show that he was extremely reckless, almost to the point that he knew that his conduct was substantially certain to cause serious physical injury to his victim. *Id.*, 655 P.2d at 336–39. In order to sustain this burden, the state was required to show that Rhodes had knowledge of the risk that his conduct posed to his victim's safety.

The court properly concluded that Rhodes' knowledge about the circumstances leading to Ryan Rhodes' death was relevant to prove his knowledge of the risk to Amanda from throwing her on the bed. *See, e.g., Shane v. Rhines*, 672 P.2d 895, 899 n. 3 (Alaska 1983); *Abruska v. State*, 705 P.2d 1261, 1263–64 & n. 1 (Alaska App.1985); 2 J. Wigmore, *Evidence* §§ 2245–301 (Chadbourn rev. ed. 1979) and C. Wright and K. Graham, *Federal Practice and Procedure: Evidence* § 5245 (1978). As Wright and Graham point out, where evidence is offered to show state of mind or knowledge, no inference as to character is required. The evidence is not being used to show that because the defendant acted in a particular way in the past, he acted in that same way in the present, and consequently, use of the evidence for this purpose is not precluded by Evidence Rule 404(b). *Id.*, § 5245 at 505.

---

**3.** Rhodes argues that Judge Buckalew acted improperly in imposing a $40,000 fine and suspending the fine on the condition that Rhodes establish a $20,000 trust fund for Amanda. Rhodes argues that Judge Buckalew's use of a fine was unduly coercive and that Judge Buckalew did not make a sufficient inquiry into Rhodes' ability to pay. *See Karr v. State*, 686 P.2d 1192, 1197 (Alaska 1984). Judge Buckalew made no findings concerning why he imposed this part of the sentence. Therefore, we also vacate this part of the sentence and remand this matter back to the trial judge.