Michael Alan **WENTZ**, Appellant,

v.

**STATE of Alaska, Appellee.**

No. A–2593.

Court of Appeals of Alaska.

July 14, 1989.

---

Venable Vermont, Jr. Asst. Public Defender and John Salemi, Public Defender, Anchorage, for appellant.

Cynthia Ducey, Asst. Dist. Atty., Dwayne W. McConnell, Dist. Atty., Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

### OPINION

BRYNER, Chief Judge.

Michael Alan Wentz was convicted after pleading no contest to a single count of assault in the first degree, in violation of AS 11.41.200(a)(1) (recklessly causing serious physical injury by means of a dangerous instrument). The offense is a class A felony, punishable by a maximum term of twenty years' imprisonment. AS 12.55.-125(c). The presumptive term for a first felony offender is five years' imprisonment. AS 12.55.125(c)(1); *New v. State*, 714 P.2d 378 (Alaska App.1986). After

finding two aggravating factors applicable to the case, Superior Court Judge Karl S. Johnstone sentenced Wentz, a first felony offender, to an adjusted presumptive term of fifteen years with three years suspended. Wentz appeals, contending that the sentence is excessive. We reverse.

Wentz was convicted for injuries that he inflicted on his wife, F.S. Wentz apparently became angry at F.S. because he believed that she had had sexual intercourse with another man. Wentz was intoxicated and severely beat F.S., breaking her skull and causing other serious physical injuries. Wentz did not secure medical assistance for F.S. until approximately seven hours after the beating.

As a result of the assault, F.S. required protracted hospitalization and suffered permanent brain damage. The injuries to F.S. were particularly dangerous because she suffered from a serious heart condition that made her vulnerable to infection. F.S. had been scheduled to undergo open heart surgery in January of 1988 to replace a faulty heart valve. The surgery was postponed as a result of her injuries. In addition to her heart condition, F.S. was deaf and mute.

At the time of Wentz' sentencing, approximately six months after the assault, F.S. was still confined to a nursing home. Although she had made some progress in recovering from her injuries, F.S. still had no definite prospect of recovering sufficiently to allow her to be discharged in the immediate future.

Wentz was thirty-two years old when he committed the offense. Although he had never been convicted of a felony, Wentz had twelve prior misdemeanor convictions. Apparently, three of the convictions were for assaultive crimes, one of which was a misdemeanor assault on F.S. All of Wentz' prior offenses appear to have been alcohol related, reflecting his long-standing problem with alcohol abuse. On four prior occasions, Wentz had completed alcohol rehabilitation programs. He had also participated in and completed the Male Awareness program. Despite his numerous misdemeanor convictions, however, Wentz had

never served any significant period of time in jail. He was on informal probation for his most recent misdemeanor conviction, a fourth-degree assault, when he committed the current offense.

A psychiatric evaluation prepared for use in sentencing confirmed that Wentz has a serious problem with alcohol abuse, but found no evidence of any serious personality disorder. The report noted that Wentz appeared to be remorseful and was determined to address his problem with alcoholism. However, the report concluded that Wentz' prognosis for successfully dealing with alcoholism was difficult to predict.

Prior to sentencing, Judge Johnstone found two aggravating factors applicable to Wentz' case: first, that Wentz committed the offense upon his spouse, AS 12.55.-155(c)(18); second, that Wentz committed the offense knowing that F.S. was particularly vulnerable by virtue of her heart condition and deafness, AS 12.55.155(c)(5). Judge Johnstone rejected one aggravating factor proposed by the state: that Wentz' conduct was among the most serious within the definition of the offense, AS 12.55.-155(c)(10). The judge concluded that F.S.'s injuries were not sufficient to establish this aggravating factor by clear and convincing evidence.

In imposing sentence, Judge Johnstone relied on Wentz' prior misdemeanor record and his continued problems with alcohol abuse in concluding that Wentz was a dangerous offender and that his prospects for rehabilitation were poor. Based on this conclusion and upon the seriousness of Wentz' current case, Judge Johnstone expressed the view that Wentz was a worst offender and that a sentence significantly exceeding the five-year presumptive term was necessary for the protection of the community. Accordingly, the judge sentenced Wentz to a term of fifteen years with three years suspended.

■ On appeal, Wentz' initial contention is that Judge Johnstone erred in finding, as an aggravating factor, that F.S. was particularly vulnerable. We are satisfied, however, that the sentencing court's reliance on this aggravating factor was not clearly erroneous. There is substantial evidence in the sentencing record to support a finding that, because of her heart condition and deafness, F.S. was particularly vulnerable and incapable of resisting Wentz' assault.

■ Wentz' second contention is that his unsuspended term of twelve years to serve is excessive. We conclude that this argument has merit.

In our prior decisions, we have observed that the primary objectives of Alaska's presumptive sentencing statutes are uniformity and the elimination of disparity in sentencing. *See, e.g., DeGross v. State,* 768 P.2d 134 (Alaska App.1989); *Juneby v. State,* 641 P.2d 823 (Alaska App.1982), *modified in part,* 665 P.2d 30 (Alaska App. 1983). In recognition of these objectives, we have consistently urged moderation in the adjustment of presumptive terms:

[U]nless a measured and restrained approach is taken to the adjustment of presumptive sentences for both aggravating and mitigating factors, then the prospect of attaining the statutory goal of uniform treatment for similarly situated offenders would quickly be eroded, the potential for irrational disparity in sentencing would threaten to become reality, and the revised code's carefully fashioned system of escalating penalties for repeat offenders would be rendered utterly ineffective.

*Juneby v. State,* 641 P.2d at 833.

Wentz was subject to a five-year presumptive term. *See* AS 12.55.125(c)(1); *New,* 714 P.2d at 384. Based on two aggravating factors, the sentencing court imposed an adjusted presumptive term of fifteen years with three years suspended, a term substantially exceeding not only the applicable five-year presumptive term, but also the ten-year presumptive term that would have applied had Wentz previously been convicted of another felony.

The significant enhancement of Wentz' presumptive term is problematic in light of our past decisions dealing with first offenders convicted of class A and class B felonies. In *Holtzheimer v. State,* 766 P.2d

1177, 1180 (Alaska App.1989) (citations omitted), we said:

> In cases involving class A and class B felonies, we have consistently recognized that composite terms exceeding ten years of imprisonment should be reserved for offenders who have prior felony records and who have spent substantial periods of time in prison.

We have reached the same conclusion in the specific context of a first offender convicted of first-degree assault. In *Pruett v. State*, 742 P.2d 257, 264 (Alaska App.1987) (citations omitted), we observed:

> Sentences of ten years or more for conduct equivalent in seriousness to class A felonies under current law have generally been based on isolation as a goal of sentencing and have been reserved for those with a proven record of recidivism, or those whose conduct involved premeditated attempts to kill or seriously injure.

The state argues that Wentz' case is exceptional, comparing it to *Sweetin v. State*, 744 P.2d 424 (Alaska App.1987). In *Sweetin*, we approved composite assault sentences for a first offender totaling thirty-one years with five years suspended. *Sweetin*, however, falls within the class of offenses we characterized in *Pruett* as "premeditated attempts to kill or seriously injure." *Pruett*, 742 P.2d at 264. Sweetin was convicted of four separate crimes—two first-degree assaults, one third-degree assault, and one count of criminal nonsupport. Sweetin committed the offenses against his one-year-old daughter over a period of about two weeks. Each of the three assaults involved a particularly egregious act of deliberate cruelty. In the final assault, Sweetin held his daughter's head under water in the bathtub for at least five minutes.

The injuries that Sweetin inflicted left his daughter blind, possibly deaf, and mentally retarded. It appeared that the child would probably never become toilet trained, would be incapable of feeding herself, and would need physical therapy for the rest of her life. *Sweetin*, 744 P.2d at 426. In approving the exceptionally severe sentences imposed by the sentencing court,

this court was "impressed by the state's argument that [Sweetin's] case [was] analogous to a murder case." *Id.*

By contrast to Sweetin's conviction for multiple assaults involving deliberate cruelty, Wentz was convicted for a single episode of assault that was impulsive rather than deliberate and premeditated. Though the injuries inflicted by Wentz were severe and to some extent permanent, they were nevertheless considerably less serious than those inflicted by Sweetin. The sentencing court in the present case expressly rejected the state's contention that Wentz' conduct was among the most serious within the definition of first-degree assault.

In our view, the circumstances in Wentz' case are far closer to those of *Pruett v. State*, 742 P.2d 257, and *Rhodes v. State*, 717 P.2d 422 (Alaska App.1986), than to those of *Sweetin*. In both *Pruett* and *Rhodes*, we dealt with aggravated cases of first-degree assault committed by first offenders against vulnerable victims—in Pruett's case an elderly woman, and in Rhodes' case a young child. Pruett's case involved repeated acts of violence over a lengthy period of time. Moreover, in both cases, reliable evidence was presented at the sentencing hearing to link the defendants to prior acts of violence. In both cases, we reversed sentences exceeding ten years of unsuspended incarceration. In *Rhodes*, we directed the imposition of a sentence not to exceed ten years of unsuspended imprisonment, and in *Pruett* we remanded for a sentence not to exceed fifteen years with five years suspended.

In the present case, the sentencing court relied on Wentz' extensive misdemeanor record and on his past failures at rehabilitation to conclude that Wentz was a dangerous offender who needed to be isolated for the protection of the public. These factors do not, however, warrant the imposition of a term exceeding ten years of unsuspended incarceration.

Although Wentz has failed at various rehabilitative programs in the past, he has nevertheless consistently made voluntary efforts to address his problem with alcoholism. At one point he apparently managed

to maintain sobriety for approximately nineteen months. While repeatedly convicted of misdemeanors, Wentz has never been sentenced to serve more than several days in jail, and he has apparently never previously been under formal probationary supervision.

Our past reluctance to approve sentences of more than ten years for first felony offenders convicted of class A or class B felonies has been based in part on our analysis of past sentencing practices, *see, e.g., Pruett,* 742 P.2d at 265–68, and in part on the ABA Standards dealing with dangerous offenders. As we said in *Pruett,* under the ABA Standards,

> [c]haracterization as a dangerous offender or professional criminal requires a substantial criminal record, usually involving two felony convictions within the five years preceding the offense for which the defendant is being sentenced, and at least one full year of imprisonment.

*Id.* at 264 (citations omitted). We interpreted the approach adopted in the ABA Standards as implicitly recognizing that a record of felony convictions and a substantial period of imprisonment are the most accurate and reliable "tests [of] a defendant's amenability to personal deterrence and rehabilitation." *Pruett,* 742 P.2d at 264 n. 8.

Here, neither Wentz' prior misdemeanor convictions nor his failure at voluntary efforts to achieve lasting sobriety justifies the conclusion that he is an offender who is incapable of being deterred or rehabilitated by a term of ten years or less.

Having independently reviewed the entire record, we conclude that the sentence imposed below was clearly mistaken. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974). Accordingly, the sentence is REVERSED, and this case is REMANDED for imposition of a sentence that does not exceed fifteen years with five years suspended.