**Frank L. DEXTER, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 6741.**

Court of Appeals of Alaska.

Nov. 4, 1983.

Margaret W. Berck and Janet L. Rice, Asst. Public Defenders, and Dana Fabe, Public Defender, Anchorage, for appellant.

Charles M. Merriner, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION

COATS, Judge.

Frank L. Dexter was indicted for sexual assault in the third degree, AS 11.41.430, a class C felony, and burglary in the first degree, AS 11.46.300, a class B felony. A jury convicted Dexter of the sexual assault but acquitted him on the burglary charge. Judge Duane Craske sentenced Dexter to five years with one year suspended, placing him on probation for three years after his period of incarceration. He also ordered Dexter's parole eligibility restricted for a period of three years and ordered Dexter to pay a $6,000 fine. Dexter appeals his conviction and sentence to this court. We affirm his conviction but remand for resentencing since we conclude that the trial judge may have relied on information which was not sufficiently verified to sentence Dexter.

At sentencing the state introduced evidence that Dexter had committed other sexual assaults. The state introduced a portion of the transcript in *State of Alaska v. Frank L. Dexter,* 1SI–S80–327 CR. In that prior case, Dexter was charged with sexual assault in the first degree. The case result-ed in a hung jury and ultimately the state dismissed the charge.

The state also called Mrs. H. as a witness. Mrs. H. testified that she was the mother of O.H., a seventeen-year-old girl. Mrs. H. stated that in February of 1981 her daughter related an incident involving Mr. Dexter. Mrs. H. said that she saw bruises on her daughter's arms and that her daughter had nightmares over the incident. In conjunction with this testimony, the state played into the record a tape recorded statement between O.H. and Sgt. Steinnerd. In the interview, O.H. claimed that Mr. Dexter first attempted to force her to have oral sex with him. When that proved unsuccessful, she said that Mr. Dexter had sexual intercourse with her against her will.

Dexter has not objected to the fact that the trial court considered the preceding testimony. However he objects vigorously to evidence which the state presented that he raped L.T.

The evidence before the trial judge with respect to the L.T. rape consisted of Sgt. Steinnerd's testimony, a tape recording made by Sgt. Steinnerd of his interview with L.T.'s former boyfriend, and the simple denial of the rape by Dexter on direct examination. Dexter was not questioned with respect to the L.T. rape on cross-examination. Neither L.T. nor her former boyfriend was available for examination. The evidence developed that Sgt. Steinnerd's knowledge of the L.T. rape derived wholly from his taped interview with Mr. Dyakanoff, L.T.'s former boyfriend. The interview occurred on February 4, 1981, four days after L.T. related the rape incident to Dyakanoff. The rape took place the evening before that conversation. At the time, Dyakanoff resided at the Aurora's Watch, a halfway house for recovering alcoholics. However, it did not appear to Sgt. Steinnerd that Dyakanoff had been drinking prior to the interview.

Dyakanoff described L.T. as a young woman from Anchorage, caucasian, perhaps twenty-four years of age with a mother in Wilcox, Arizona. According to Dyakanoff, L.T. described her assailant as Frank Dixon

or Dexter in his late 30's, tall, curly hair and glasses. She met Frank in an unnamed bar the evening before and went with him to his residence. Whether she went voluntarily or not is unclear. She remembered being punched while on the couch, blacking out and then finding herself taped down to a bed by her wrists and legs. She remembered being raped.

According to Dyakanoff L.T. looked "beaten up." He said she had a cut lip, black eye and swollen face. He remarked that initially he did not believe her story and argued with her about it. Ultimately, he did believe her because of her injured condition and the fact that she was so upset. During their conversation, L.T. ingested several "downers."

The state contends the evidence of the L.T. rape is sufficiently verified to appear trustworthy. The state argues that it is significant that tape was used to tie L.T. down and that tape also was used in another sexual assault involving Dexter. The state further points out that L.T. displayed marks of having been beaten. However, we note that the only evidence of this was from Dyakanoff's taped interview.

Dexter contends that the information is inherently untrustworthy, noting L.T.'s drug usage during her conversation with Dyakanoff and his lack of firsthand knowledge of the rape. Dexter also suggests that L.T.'s story could have been fabricated in order to gain the attention and sympathy of her former boyfriend. Furthermore, Dexter points out that he did not have an opportunity to cross-examine L.T. Sgt. Steinnerd tried to locate L.T. through the Wilcox Arizona Police Department, however, they were unresponsive. It does not appear from the record that Dexter's counsel ever attempted to locate L.T. or Dyakanoff.

■ We conclude that Dexter is correct that the information concerning his alleged rape of L.T. was not sufficiently verified to consider in sentencing. *Nukapigak v. State*, 562 P.2d 697 (Alaska 1977), *aff'd on rehearing*, 576 P.2d 982 (Alaska 1978). The attenuated nature of the testimony, the

multiple hearsay problem in Sgt. Steinnerd's testimony, and the inability of the defendant to cross examine either L.T. or Dyakanoff combine to lead us to this conclusion. We recognize that Judge Craske did indicate that he gave the testimony concerning Dexter's alleged rape of L.T. less weight than the other alleged incidents; Judge Craske commented on the fact that this evidence came from secondary sources. However, we are unable to tell what weight, if any, Judge Craske gave this incident in passing sentence. We therefore remand the case for resentencing. On resentencing the trial court should not consider the information concerning the alleged rape of L.T.

■ Dexter next argues that his sentence is excessive. Because of our disposition of his first point on appeal, he must be resentenced. We therefore do not reach this issue. However, we note that Dexter is a first felony offender convicted of a class C felony. The presumptive sentence for a second felony offender for such an offense would be two years. AS 12.55.125(e)(1). The presumptive sentence for a third felony offender would be three years. AS 12.55.-125(e)(2). In *Austin v. State*, 627 P.2d 657, 657–58 (Alaska App.1981) we stated "[n]ormally a first offender should receive a more favorable sentence than the presumptive sentence for a second offender. It is clear this rule should be violated only in an exceptional case." Since Dexter received a sentence of five years with one suspended and has had his parole eligibility restricted for three years under his current sentence, his sentence is clearly in excess of the three-year presumptive sentence which a third felony offender would face. On remand we would ask the trial judge, if he imposes a sentence in excess of two years' imprisonment, to make specific findings indicating the reasons why he concludes that this case is exceptional. We specifically do not decide whether Dexter's current sentence is excessive.

■ Dexter argues that Judge Craske incorrectly instructed the jury on the ele-

ments of third-degree assault. He asks us to reverse his case and remand for a new trial because of this alleged error. Dexter argues that Judge Craske failed to inform the jury that they had to find the victim of the rape was actually incapacitated in order to convict him of sexual assault in the third degree. Dexter concedes that he did not object to the instructions which the trial court gave. Alaska R.Crim.P. 30. However, he asks us to find that the instructions which the trial court gave on incapacity of the victim constituted plain error. Alaska R.Crim.P. 47(b).

Alaska Statute 11.41.430 makes it unlawful for a person to engage "in sexual penetration with a person who he knows ... is incapacitated." That actual incapacity is an element of sexual assault in the third degree is not subject to argument. The incapacity of the victim, P.M., was clearly at issue during the trial.[1] The question is whether the instructions adequately informed the jury that a necessary step to their ultimate conclusion would be to decide whether P.M. was incapacitated when Mr. Dexter penetrated her.

Judge Craske instructed the jury as follows:

Instruction No. 12:

In order to establish the crime of sexual assault in the third degree, it is necessary for the state to prove beyond a reasonable doubt the following:

First, that the event in question occurred at or near Sitka, Alaska, and on or about July 28, 1981;

·Second, that Frank L. Dexter knowingly engaged in sexual penetration with another person; and

Third, that the *defendant knew that the other person was incapacitated.* [emphasis added]

Instruction No. 18:

A person acts "knowingly" with respect to conduct or to a circumstance described by the law when he is aware that the

circumstance exists. When knowledge of the existence of a particular fact must be proved by the government, that knowledge is established if a person is aware of a substantial probability of the existence of the fact, unless he actually believes that it does not exist. A person who is unaware of a circumstance of which he would have been aware had he not been intoxicated acts knowingly with respect to that circumstance.

The state points out that instruction 12 is from the pattern instructions promulgated by the Alaska Supreme Court's Committee on Pattern Jury Instructions; and the state argues that when instruction 12 is taken together with the statutory definition of "knowingly" in instruction 18 the jury must be deemed to have been adequately informed. We agree with the argument advanced by the state, at least to the point of agreeing that Dexter has not met the substantial burden necessary to show plain error. *Moreau v. State,* 588 P.2d 275, 280 (Alaska 1978).

 Dexter next argues that Judge Craske erred in denying his motion for a new trial which was based on the prosecution's failure to disclose that one of its witnesses, Bernadette Lee, was being investigated for the sale of cocaine at the time of Mr. Dexter's trial. The alleged sexual assault in this case took place on July 28, 1981. Ms. Lee allegedly made sales of cocaine on November 2, and November 3, 1981. She was indicted for these offenses after Dexter's trial on December 22, 1981. The state concedes that it was aware at the time of trial that Bernadette Lee was under investigation for the sale of cocaine and that this information was not revealed to Dexter.

Dexter argued in the trial court that the evidence that Bernadette Lee was under investigation for sale of cocaine should have been revealed to the defense.[2] His argu-

---

**1.** The state's theory of incapacity apparently was that P.M. was in an alcohol-induced sleep. The defense seemed to argue that her sleep was normal, not alcohol-induced, and that she most likely would have awakened before Dexter penetrated her.

**2.** Neither Dexter nor the state has briefed the issue of what standard we should apply in

ment in his new trial motion appears to be that this information was relevant because it brings into question the ability of Bernadette Lee to perceive and recall the events surrounding the alleged rape. Apparently the defense theory was that the evidence might tend to show that Bernadette Lee's perceptions and recollection may have been influenced by the use of cocaine. Since Bernadette Lee was also the roommate of the victim in the case, Dexter argued that P.M.'s actions on the evening of the alleged rape and her perception and recollection could have been influenced by the use of cocaine. Judge Craske denied the motion, reasoning that the evidence that Bernadette Lee was under investigation for sale of cocaine had no probative value. On appeal Dexter has also suggested that the fact that Bernadette Lee was under investigation for sale of cocaine at the time of his trial may have biased her testimony in favor of the state; he was harmed because he could not explore that possibility at trial through cross-examination.

We conclude that Dexter has not demonstrated that the fact that Bernadette Lee was under investigation for the sale of cocaine at the time of his trial was relevant. The mere fact that Bernadette Lee allegedly sold cocaine, near the time of the offense does not indicate that she used cocaine; nor does it indicate she was under the influence of cocaine on the date of the alleged rape. The inference that P.M. could have been under the influence of cocaine at the time of the alleged rape is even more attenuated. There is also no reason, on the record before us, to conclude that Bernadette Lee had any knowledge of the fact that she was under investigation for the sale of cocaine at the time she testified in Dexter's trial so that she would have any reason to be biased.

We do not preclude Dexter from renewing his motion for a new trial in the trial court upon remand to try to establish that Bernadette Lee was aware of the police investigation at the time she testified.

However, on the record before us, Dexter's motion for a new trial is supported only by one fact, that Bernadette Lee was under investigation for sale of cocaine at the time of Dexter's trial. The inferences which Dexter wishes to draw from this fact are extremely speculative at this point. We note that the record does not disclose that Dexter made any attempt to support the inferences which he wants to make from the evidence by interviewing Bernadette Lee, P.M., or anyone else associated with the charges brought against Bernadette Lee. He also has not represented that he was in any way prevented from developing those facts. We conclude that Judge Craske did not err in denying Dexter's new trial motion.

The conviction is AFFIRMED. The case is REMANDED for resentencing.

reviewing an alleged non-disclosure of relevant evidence by the prosecution. We do not believe that we need to decide this issue because it is clear that Dexter's motion for a new trial

fails at this point under any standard. *See Carman v. State,* 604 P.2d 1076, 1080–82 (Alaska 1979); *Maloney v. State,* 667 P.2d 1258 (Alaska App., 1983).