**Samuel C. AGWIAK, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–2170.**

Court of Appeals of Alaska.

March 4, 1988.

Susan Orlansky, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Leonard M. Linton, Jr., Asst. Dist. Atty., Dwayne W. McConnell, Dist. Atty., Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Samuel C. Agwiak was charged with one count of sexual assault in the first degree and two counts of sexual abuse of a minor. Agwiak eventually pled no contest to one count of sexual abuse of a minor. The remaining charges were dismissed in return for the plea. Because Agwiak's offense occurred in 1982, it was a class C felony. *See* former AS 11.41.440. Presumptive terms of two and three years are prescribed for second and subsequent offenders convicted of class C felonies; there is no presumptive term for a first felony offender. AS 12.55.125(e). Superior Court Judge John H. Bosshard, III sentenced Agwiak, a first felony offender, to a term of three and one-half years with one year

suspended. Agwiak appeals, contending that the sentence is excessive. We affirm.

Agwiak's charges stemmed from a report of sexual abuse made by Agwiak's niece, D.H., in January of 1986. According to D.H., Agwiak was a frequent visitor to her parents' home from 1980 through 1982, when D.H. was between the ages of nine and eleven years old. D.H. stated that, when she was nine, Agwiak began grabbing and kissing her on the mouth, while stroking her body. D.H. claimed that, at a later point, Agwiak would call her into his room, grab her by the wrist, and force her to touch his penis. D.H. also charged that, on Christmas of 1981, she awoke to find Agwiak in her bedroom; he lay down on top of her, stroked her vagina, and had sexual intercourse. D.H. stated that similar incidents occurred during early 1982. The abuse ended in June of 1982, when D.H. threatened Agwiak with a knife.

An investigator also interviewed T.H., D.H.'s sister. T.H. reported an incident of sexual contact that occurred when she was thirteen. She had been sent by Agwiak's wife to sleep in Agwiak's bedroom one night when all the other bedrooms were occupied. T.H. got into bed with Agwiak, who was already asleep. Agwiak then began to touch T.H.'s breasts and vagina. At the time, T.H. dismissed the incident as insignificant, because she believed that, in his sleep, Agwiak had mistaken her for his wife.

Following D.H.'s report of sexual abuse, the police obtained a warrant to monitor a telephone call between D.H. and Agwiak. During the call, Agwiak acknowledged an incident of sexual contact in which he placed his hand on D.H.'s vagina. Agwiak was subsequently interviewed by the police and admitted several incidents of sexual contact and attempted sexual contact.[1] Al-

---

1. Agwiak made these admissions in an interview conducted immediately before he took a polygraph examination. Prior to sentencing, Agwiak moved to have the results of the polygraph examination stricken from the presentence report. The state did not oppose this motion. In its sentencing memorandum on appeal, the state included a reference to the polygraph results.

Agwiak moved to strike the state's reference, arguing that the results had been stricken below. The state opposed the motion. It pointed out that the substance of Agwiak's pre-polygraph interviews had not been stricken and contended that the reference to the polygraph results was provided only to inform this court of the context in which the pre-polygraph admis-

though Agwiak denied ever actually engaging in sexual intercourse with D.H., he acknowledged attempting to have intercourse with her over a period of several years and conceded that he had contemplated intercourse with D.H. during the specific incident that was the subject of his monitored telephone conversation with D.H. It was this incident that ultimately served as the basis for Agwiak's no contest plea.

Agwiak subsequently denied all sexual contact with D.H., other than the single incident to which he had entered his plea of no contest. In a written statement submitted to the court prior to sentencing, Agwiak insisted that he had sexual contact with D.H. only on one occasion. Agwiak claimed that D.H. must have been sexually assaulted by some other person, and he was critical of the police for failing to investigate the identity of the unknown assailant. Likewise, in his allocution at the sentencing hearing, Agwiak maintained that there had been only one instance of sexual contact with D.H.

Agwiak was thirty-nine years of age at the time of his sentencing hearing in June of 1987. He had been married for approximately eight years, but divorced at the time of his arrest in this case. Agwiak's former wife told the author of the presentence report that, at times during their marriage, Agwiak had been physically abusive toward her and toward her two children. She reported that on one occasion she had obtained a temporary restraining order against Agwiak, which resulted in Agwiak's participation in the Male Awareness Project. Agwiak apparently completed that program. Agwiak's wife also characterized Agwiak as manipulative and lacking in any genuine remorse.

Although Agwiak had no prior felony convictions, he had been convicted of five misdemeanor offenses between 1967 and 1976—all apparently minor, alcohol-related

incidents. These offenses reflected a substantial problem of alcoholism that Agwiak suffered from at the time. Subsequently, however, Agwiak appears to have made substantial progress in controlling his drinking problem. The record indicates only one incident of alcohol-related misconduct in the ten years prior to Agwiak's conviction: in 1984, he apparently became intoxicated and made a series of obscene telephone calls. Agwiak was convicted of making harassing communications. As part of his sentence for this offense, Agwiak successfully completed an alcohol rehabilitation program. During the seven years immediately preceding his sentence, Agwiak maintained a good record of employment.

In sentencing Agwiak to a term of three and one-half years with one year suspended, Judge Bosshard expressly found the circumstances of Agwiak's case to be aggravated. The judge concluded that a sentence exceeding the two-year presumptive term for a second felony offender was justified, despite Agwiak's status as a first offender. *See Austin v. State*, 627 P.2d 657 (Alaska App.1981).

Specifically, Judge Bosshard found that Agwiak had abused D.H. over a prolonged period of time and that the abuse consisted of numerous types of sexual contact. Judge Bosshard also noted Agwiak's close relationship to D.H. and pointed out that Agwiak had been involved in an episode of sexual contact with another victim, D.H.'s sister. These factors led the judge to conclude that Agwiak's conduct was among the most serious within its class.

Judge Bosshard additionally emphasized that Agwiak's 1984 harassment conviction seemed indicative of sexual dysfunction. This, combined with Agwiak's insistence that he had been involved in only one incident of sexual touching and with the presentence report's conclusion that Agwiak

sions were made. We reserved ruling on Agwiak's motion to strike pending disposition of this appeal. Having now reviewed the record, it appears to us that the state could have provided adequate context for Agwiak's pre-polygraph admissions without specifically disclosing the re-

sults of the polygraph test. Agwiak's motion to strike is therefore well-founded, and we will deem the reference to the polygraph results contained in the state's sentencing memorandum to be deleted.

appeared to be manipulative and seemed to lack genuine remorse, led the judge to conclude that Agwiak's prospects for rehabilitation were not favorable. On this basis, Judge Bosshard concluded that a substantial sentence was necessary to deter Agwiak personally and to protect the community until Agwiak had completed a program of therapy for sexual offenders. Finally, Judge Bosshard noted that the victim in this case, D.H., had apparently suffered severe and long-standing emotional injuries as a result of Agwiak's offenses. This led the judge to conclude that a substantial sentence was appropriate for the purposes of expressing community condemnation of the offense.

On appeal, Agwiak challenges Judge Bosshard's conclusion that the case was exceptionally aggravated. Agwiak initially takes issue with the finding that he was involved in repeated instances of sexual abuse with D.H. over a prolonged period of time. According to Agwiak, the record does not suffice to support this conclusion, because Agwiak denied the additional misconduct and the state failed to call D.H. as a witness. Agwiak contends that, under the circumstances, reliance on D.H.'s hearsay statements, as related in the presentence report, was impermissible.

■ However, in imposing sentence, the court was entitled to rely on all sufficiently verified information in the sentencing record. *Nukapigak v. State,* 562 P.2d 697, 701 (Alaska 1977), *aff'd on rehearing,* 576 P.2d 982 (1978). D.H.'s statements, as reflected in the presentence report, certainly qualified as sufficiently verified information. A separate issue is whether the court could rely on those statements without affording Agwiak the opportunity to confront and cross-examine D.H. We have previously held that sentencing courts may place reliance on the hearsay statements of a victim in the absence of an express testimonial denial by the accused or a specific request to confront and cross-examine. *See Pickens v. State,* 675 P.2d 665, 671 (Alaska App.1984). Agwiak did not expressly request that D.H. be called as a witness. While he did make a conclusory

denial, through counsel, of D.H.'s out-of-court statements, and while he advanced similar denials in his allocution and in a written statement attached to the presentence report, Agwiak elected not to testify at the sentencing hearing. Moreover, D.H.'s hearsay statements were not the only evidence supporting the court's conclusions concerning Agwiak's prior conduct. Agwiak had himself previously admitted numerous instances of sexual contact and attempted sexual contact with D.H.—admissions that were flatly inconsistent with the position he asserted at the sentencing hearing. Under these circumstances, we conclude that there was sufficient evidence in the sentencing record to permit Judge Bosshard to conclude that Agwiak had engaged in a prolonged series of sexual contacts with D.H.

■ Agwiak similarly challenges the sentencing court's finding that he engaged in a sexual touching with D.H.'s sister, T.H. Agwiak maintains that the incident amounted to a mistake and involved no improper intent. At the sentencing hearing, Agwiak emphasized that T.H., herself, characterized the incident as being innocent, concluding that Agwiak had simply mistaken her for his wife. In support of his position, Agwiak urged the sentencing court to review the police reports dealing with the incident. Judge Bosshard, however, apparently without reviewing the reports, expressed his disbelief of Agwiak's explanation and concluded that the incident with T.H. was significant for sentencing purposes. Agwiak now claims that the sentencing court was obligated to review the police reports before reaching this conclusion.

While it might have been preferable for the court to have reviewed the reports, and while such a review might have been obligatory had there been any serious question concerning the nature or extent of Agwiak's conduct toward T.H., neither the nature of Agwiak's acts nor the context in which those acts occurred appear to have actually been disputed. The only dispute below concerned Agwiak's state of mind.

Although it was undeniably important for Agwiak to establish T.H.'s perception of the incident, we believe the sentencing court was entitled to draw its own inferences as to Agwiak's state of mind. The court was not bound by T.H.'s characterization, but could draw its own conclusion based on all of the information available to it at the time of sentencing. Judge Bosshard apparently understood and accepted the fact that T.H. had been willing to assume that there was an innocent explanation for Agwiak's sexual touchings. It appears that Judge Bosshard was simply unwilling to accept that explanation as plausible, given the facts available to him at the sentencing hearing.

Agwiak has not claimed that the police reports contained any substantive information that differed from the factual information contained in the presentence report and described by the parties. In fact, Agwiak apparently never actually attempted to submit the police reports to the court, and he has not included them in the record on appeal. Agwiak evidently wanted the court to review the reports in order to establish that T.H. had in fact characterized the incident as innocent. As we have already noted, however, Judge Bosshard understood T.H.'s response to the incident. Based on the record before us, there is nothing to indicate that the judge would have gained any additional information had he reviewed the reports. Accordingly, we are unable to conclude that Judge Bosshard committed error in failing to do so.

■ Agwiak further contends that the other facts relied on by the court to justify an aggravated first-offense sentence do not qualify as statutory aggravating factors and, therefore, under *Austin*, cannot support a sentence above the presumptive term for a second felony offender. These facts include the extent of psychological and emotional damage suffered by D.H., Agwiak's prior misdemeanor record, Agwiak's close relationship to D.H., and Agwiak's insistence that only one incident of sexual touching had occurred.

We agree with Agwiak's assertion that none of these facts would qualify as statutory aggravating factors, either individually or in combination. Nevertheless, Judge Bosshard properly concluded that Agwiak's conduct was among the most serious within the class of offenses for which he was convicted. This finding qualifies as a specific aggravating factor. *See* AS 12.55.-155(c)(10). Given the number and duration of Agwiak's sexual contacts with D.H., and the fact that those contacts involved various types of acts, some of which verged on more serious offenses, we believe that Judge Bosshard did not err in finding the presence of this aggravating factor. In our view, the various subsidiary factors considered by Judge Bosshard are relevant to deciding what weight should be accorded to the aggravating factor that had been established. They could therefore properly be relied on by the court in reaching its conclusion that a sentence in excess of the presumptive term was appropriate.

The fundamental concern of the rule we adopted in *Austin* is to assure that first offenders who are not subject to presumptive sentencing receive more favorable treatment than they would have been subject to under the presumptive sentencing scheme governing previously convicted felons. *Brezenoff v. State*, 658 P.2d 1359, 1362–63 (Alaska App.1983). Here, we are convinced that, had Agwiak been convicted as a second felony offender, the seriousness of his conduct would have justified the finding of an aggravating factor, and that factor would have been of sufficient magnitude to warrant the imposition of an adjusted presumptive term substantially greater than the sentence Agwiak actually received as a first offender. Under these circumstances, we find no violation of the *Austin* rule. *Id.*

■ We must, of course, separately consider Agwiak's total sentence to determine whether it is excessive. We are entitled to reverse a sentence as excessive only if,

upon an independent review of the entire sentencing record, we conclude that the sentence imposed below was clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974). Having independently reviewed the record in this case, we find that the sentence imposed below, while severe, was not clearly mistaken.

The sentence is AFFIRMED.