**Larry Paul HAMILTON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A-2341.**

Court of Appeals of Alaska.

April 14, 1989.

Michael Dieni, Asst. Public Advocate, and Brant McGee, Public Advocate, Anchorage, for appellant.

Tonja Woelber, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, Judges.

## OPINION

SINGLETON, Judge.

Larry Paul Hamilton was convicted by a jury of sexual assault in the first degree, an unclassified felony, in violation of AS 11.41.410(a)(1). Judge Peter A. Michalski found that Hamilton had used a dangerous instrument—a knife—in perpetrating his offense and was therefore subject to the ten-year presumptive sentence. AS 12.55.-125(i)(2). He also found a number of aggravating factors and sentenced Hamilton to twenty years with five years suspended. Hamilton was placed on probation for five years after completion of his prison sentence. Hamilton appeals, challenging his conviction and his sentence. We will deal with Hamilton's contentions in order, setting out the appropriate facts where necessary to illuminate our discussion.

■ Hamilton first argues that the prosecutor was permitted to make improper comments on his pre-arrest silence and, inferentially, on his post-arrest silence. *See Doyle v. Ohio*, 426 U.S. 610, 617–19, 96 S.Ct. 2240, 2244–45, 49 L.Ed.2d 91 (1976); *Bloomstrand v. State*, 656 P.2d 584, 587 (Alaska App.1982).

The record reflects that C.M. and Hamilton were together in C.M.'s vehicle during the morning hours of May 19, 1986. C.M. testified that Hamilton sexually assaulted her during this time. Hamilton concedes sexual activity, but he claims that C.M. consented. C.M. reported the alleged assault to the police and was examined by a physician.

Officer John Daly heard a description of the suspect and thought of Hamilton. Police officers then went to Hamilton's home and told him they were searching for a prowler. The officers asked Hamilton if he had seen anything, specifically asking at what time he had come home. Hamilton indicated that he had arrived home between 2:00 and 2:30 a.m., having been dropped off by a male acquaintance and that he had seen nothing. C.M.'s testimony indicated that she had dropped Hamilton off at ap-

proximately 4:38 a.m. Hamilton did not mention to the police having been with C.M.

During her opening statement, the prosecutor said:

Larry Paul Hamilton didn't tell the police officers, hey, yeah, I had a good time last night. Don't tell my wife, but this lady and I really got it on. He didn't say that. He never told the police that he had had intercourse with anyone. He never told the police he had been with [C.M.]. He never told the police he'd been with any woman that night. And he never told the police that he had taken her—gone with [C.M.] and taken her out to a remote area and forced her to perform sexual acts on him. He told the police, I came home around 2:00 or 2:30 this morning, and it was a male friend who dropped me off. He had his chance to tell the police that he had intercourse with a woman not his wife, but he didn't. And without [C.M.'s] consent. This is a case of sexual assault in the first degree.

Defense counsel moved for a mistrial based on the prosecutor's reference to what Hamilton did not tell the police. The trial judge provisionally denied the motion, but indicated that he would permit the parties to brief the issue, and he would obtain a transcript of the argument so he could better understand precisely what was said.

Later, during direct examination of Officer Gerald Weeks, the investigating officer, the following exchange took place:

Q. During the morning of May 19th when you contacted Mr. Hamilton did he say anything about having been with [C.M.] the previous evening?

A. No, he didn't.

Q. Did he say anything about knowing [C.M.]?

A. No, he didn't.

Q. Did he say anything about having met a woman?

A. No.

Q. Did he say anything about having gone to Wasilla?

A. No.

Q. Did he say anything about having been dropped off 1.2 miles from home?

A. No, he didn't.

Defense counsel moved for a mistrial, or, in the alternative, for the court to strike this exchange on the grounds that the exchange amounted to an impermissible comment on Hamilton's right to silence. The court denied the motion for mistrial, but granted the motion to strike. The court gave the following curative instruction to the jury:

The jury is back with us and we are on record in the case of State of Alaska versus Larry P. Hamilton. Ladies and gentlemen, before you left there was an objection to the last five questions and their responses from the witness. The court has ruled that that was properly objected to. In other words, it was correct to object to that and the last five questions and responses are not to be considered by you in your deliberations. You are to draw no inferences from the defendant's not volunteering additional statements about the events of the early morning of the 19th of May, 1986.

Under the circumstances, we are satisfied that the trial court's curative instruction removed any error and that the trial court did not abuse its discretion in denying a mistrial. *See Roth v. State,* 626 P.2d 583, 585 (Alaska App.1981) (citing *Maze v. State,* 425 P.2d 235, 239 (Alaska 1967)). *But see Dorman v. State,* 622 P.2d 448, 458 (Alaska 1981).

■ Hamilton testified at trial that any sexual contact which occurred between himself and C.M. was consensual. Hamilton also testified that during the course of his sexual involvement with C.M., a car had stopped near their location. He further testified that C.M. had gotten out of her vehicle and made contact with the driver of the other car. Hamilton then testified that

C.M. advised him that she was "going to have to think of something ... to cover [her] ass."

During rebuttal argument, the prosecutor commented, "Something about a mystery car, that we hear about for the first time this morning, because he can't explain [the physical evidence in the case tying him to the offense]."

Defense counsel moved for a mistrial based on this comment, claiming that the prosecutor's comments were an attempt "to say to the jury, do not believe him because he did not tell this, did not make it voluntary explanations to the police...." Defense counsel did not argue that the comment violated any protective order implicit in the trial court's earlier striking of questions regarding pre-arrest silence. The prosecutor argued that she was not commenting on pre-arrest silence, but rather on defense counsel's failure to bring up the "mystery car" in connection with his earlier cross-examination of C.M. The trial court denied the motion, finding that the comment was "not a comment on silence, but a statement, an argument...."

The state concedes that it is conceivable that the prosecutor's comment could imply to the jury that Hamilton did not give a post-arrest exculpatory statement that included the detail of the "mystery car." However, the state argues that a mere implication is not enough to trigger the protection of the constitution. In the state's view, the question is whether " 'the jury would naturally and necessarily take [the argument] to be a comment on' [the defendant's] exercise of his right to remain silent." *United States v. Barton*, 731 F.2d 669, 675 (10th Cir.1984) (quoting *Knowles v. United States*, 224 F.2d 168, 170 (10th Cir.1955)). We agree with the state that the prosecutor's comment and rebuttal would not "naturally and necessarily" be understood as a comment on Hamilton's post-arrest silence because there was no time specified. We agree with the prosecutor's suggestion that the jury would more reasonably interpret the statement as a comment on defense counsel's failure to bring the matter up with C.M. during cross-examination. We find no error.

Hamilton next makes a number of arguments regarding the trial court's finding of aggravating factors and the trial court's enhancing his sentence beyond the ten-year presumptive term specified for one who uses a dangerous instrument in perpetrating a sexual assault in the first degree. He particularly challenges two findings: (1) that Hamilton's prior criminal history includes conduct involving aggravated or repeated instances of assaultive behavior, AS 12.55.155(c)(8); and (2) that Hamilton had a criminal history of repeated instances of conduct violative of criminal laws, whether punishable as felonies or misdemeanors, similar in nature to the offense for which he was being sentenced. AS 12.55.155(c)(21).

Essentially, the state offered hearsay evidence to establish that Hamilton had sexually assaulted two other women. In one case, Hamilton was ultimately convicted of assault in the fourth degree. The second case was not prosecuted. Hamilton did not ask to cross-examine either of the complaining witnesses. He did, however, enter a testimonial denial that he had sexually assaulted either of them. He argues that where a defendant enters a testimonial denial to verified hearsay claims of prior criminal behavior, the state must either produce the declarants, establish their unavailability, or abandon the issue.

The state points out that the evidence rules do not apply to sentencing, A.R.E. 101(c), and that the United States Supreme Court has held that a defendant's right to confront and cross-examine his accusers does not apply at sentencing. *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). The state argues that when finding aggravating factors by clear and convincing evidence, the trial judge may rely on verified information even though the defendant testimonially denies it.

The appellate courts of this state have considered similar arguments in a variety

of cases. *See Nukapigak v. State*, 562 P.2d 697, 701 (Alaska 1977), *aff'd on rehearing*, 576 P.2d 982 (Alaska 1978); *Agwiak v. State*, 750 P.2d 846, 849 (Alaska App.1988); *Pickens v. State*, 675 P.2d 665, 670–71 (Alaska App.1984); *Dexter v. State*, 672 P.2d 144, 146 (Alaska App.1983); *Willard v. State*, 662 P.2d 971, 976–77 (Alaska App.1983).

This issue does not admit of an easy answer. On the one hand, as the state points out, both state and federal courts have been willing to consider verified information adverse to a defendant even though it was based upon hearsay at sentencing. On the other hand, the courts of this state have expressed concern about hearsay in a variety of contexts beyond the trial of the case. *See, e.g., State v. Gieffels*, 554 P.2d 460, 462–65 (Alaska 1976) (grand jury) and *Taggard v. State*, 500 P.2d 238, 242–43 (Alaska 1972) (grand jury).

In *Gieffels*, the supreme court held, in interpreting Alaska Rule of Criminal Procedure 6(r), that hearsay could not be presented before a grand jury in the absence of compelling justification. The supreme court construed compelling justification to equate with necessity and suggested that necessity would normally require a finding of the unavailability of the declarant. *Gieffels*, 554 P.2d at 464–65. In *Taggard*, the supreme court indicated that if hearsay was to be used, the reliability of the hearsay declarant must be established and the declarant's statements corroborated. *Taggard*, 500 P.2d at 242–43.

The legislature incorporated the requirements of reliability and corroboration into AS 12.40.110 which permits, under limited circumstances, the use of hearsay statements before the grand jury from child accusers in sexual abuse prosecutions. We have also considered the use of hearsay in resolving factual disputes in motion practice. *See Adams v. State*, 704 P.2d 794 (Alaska App.1985). We concluded that the state may not rely on affidavits to contradict a defendant's sworn testimony. *Id.* at 797–98. *See also Alexander v. State*, 611 P.2d 469, 474–75 (Alaska 1980) (adopting a similar rule).

We recognize that both grand jury proceedings and motion practice differ from sentencing in two significant regards. First, both will normally deal with contemporaneous events. Second, those events normally occur within Alaska. In contrast, a defendant's criminal career may span many years and may extend well beyond Alaska. Nevertheless, we believe that the risks of the abuse of hearsay are sufficiently important that the state should be required to prove the unavailability of declarant witnesses before using their hearsay declarations against a defendant who denies the allegations under oath and submits to cross-examination. This is true, at least in those cases, such as this one, where the state relies on hearsay which would not be admissible at trial and which is being used to prove an aggravating factor by clear and convincing evidence. Given the differences between grand jury proceedings and sentencing, we believe the trial court should be more flexible in finding unavailability. Moreover, where adverse witnesses are located out of state, or a substantial distance from the court house, the court might permit depositions or telephone interrogations in preference to requiring the state to pay to bring the declarants to the sentencing hearing. *Compare* Alaska R.Civ.P. 99 [1] *with* Alaska R.Crim.P. 38.1.[2] Some reasonable opportunity for cross-ex-

1. Civil Rule 99 provides:

 (a) *Authorization for Telephonic Participation.*

 (1) Upon stipulation of all counsel, the court may conduct any hearing by telephone conference with telephonic participation by one or more of the parties, counsel, witnesses or the judge.

 (2) Without stipulation of the parties, the court may conduct non-dispositive or non-evidentiary proceedings with telephonic participation by one or more of the parties, counsel, or the judge.

 (3) Upon request, any party or counsel may be allowed to participate telephonically in the argument of dispositive matters or in the ex-

amination should be provided, however, where possible.[3] Where the declarants are truly unavailable and the defendant denies their allegations under oath, then we believe that the state should bear the burden of proving the veracity of each declarant and corroborating his or her testimony. *See, e.g., Murray v. State,* 770 P.2d 1131 at 1136–1137, (Alaska App., March 17, 1989) (outlining factors which the trial court should consider in determining the reliability of child hearsay declarants and the corroboration of their testimony in connection with grand jury presentations under current AS 12.40.110).

■ The state did not undertake to show the unavailability of the hearsay declarants in this case. Nor was the trial court's attention focused on establishing the veracity of the declarants and the corroboration of their testimony. Consequently, it is necessary for us to remand for resentencing.

Our determination to remand moots, at least for the present, Hamilton's other arguments regarding sentencing. Because our remand calls for a new sentencing in this case, Hamilton will have an opportunity to present those arguments to the trial court. Under the circumstances, we do not believe that the law of the case doctrine should prevent a full and complete resentencing in this matter.

The judgment of the superior court is AFFIRMED, in part, and REVERSED, in part, and this case is REMANDED for resentencing.

COATS, Judge, concurring.

In this case Hamilton faced a presumptive sentence of ten years. Judge Michalski found that several aggravating factors applied to Hamilton's sentence. Two critical aggravating factors were that Hamilton's prior criminal history included conduct involving aggravated or repeated instances of assaultive behavior, AS 12.55.-

amination of witnesses physically present before the court.

(4) In any proceeding in which the court is authorized to proceed *ex parte,* the court may contact the non-appearing party or counsel by telephone and in the interest of justice receive evidence or argument without stipulation of the parties.

(5) The court may in the interest of justice for good cause shown order that depositions be taken telephonically.

(b) *Procedure.* The following procedure must be observed concerning telephonic participation in court hearings:

(1) Hearings involving telephonic participation must be scheduled in the same manner as other hearings.

(2) When telephonic participation is requested, the court, before the hearing, shall designate the party responsible for arranging the call and the party or parties responsible for payment of the call pursuant to Administrative Rule 48.

(3) Upon convening a telephonic proceeding, the judge shall:

(i) Recite the date, time, case name, case number, names and locations of parties and counsel, and the type of hearing.

(ii) Ascertain that all statements of all parties are audible to all participants;

(iii) Give instructions on how the hearing is to be conducted, including notice that in order to preserve the record speakers must identify themselves each time they speak.

(4) A verbatim record must be made in accord with Administrative Rule 35.

(c) The right of public access to court proceedings must be preserved in accordance with law.

2. Criminal Rule 38.1 provides:

(a) In any proceeding at which the defendant's presence is required under Criminal Rule 38(a), as modified by Rule 38.2, the defendant may waive the right to be present and request to participate by the telephone. The defendant's waiver of the right to be physically present may be obtained orally on the record or in writing. The court may allow telephonic participation of one or more parties, counsel or the judge at any proceeding in its discretion. The court may allow telephonic participation of witnesses at bail hearings, omnibus hearings, probation revocation hearings or at trial with the consent of the prosecution and the defendant. The court may allow telephonic participation of witnesses at other hearings in its discretion.

(b) The provisions of AS 12.35.015 shall govern the issuance of search warrants by telephone.

3. In light of *Williams,* 337 U.S. 241, 69 S.Ct. 1079, the concerns voiced in *Stores v. State,* 625 P.2d 820 (Alaska 1980), are not in issue at sentencing. *Cf. Kotzebue v. McLean,* 702 P.2d 1309, 1315–16 (Alaska 1985) (considering telephonic depositions and testimony under the comparable civil rules).

155(c)(8), and that Hamilton had a criminal history of repeated instances of conduct violative of criminal laws, whether punishable as felonies or misdemeanors, similar in nature to the offense for which he was being sentenced. AS 12.55.155(c)(21). These aggravating factors were based on hearsay evidence that Hamilton had committed two prior sexual assaults. Hamilton testified at the sentencing hearing and denied that he had committed these alleged prior assaults. It appears that Judge Michalski placed great weight on the evidence that Hamilton committed the prior assaults; he sentenced Hamilton to twenty years with five years suspended. Under these circumstances, I have no quarrel with the majority's decision requiring more than the hearsay which the state presented at sentencing to show that Hamilton committed the two prior assaults. I am not confident, however, that in every case where the defendant denies a material matter we should require the state either to call a witness to testify at the sentencing hearing or to prove the unavailability of a witness before using hearsay statements. I would prefer to resolve this issue on a case-by-case basis. It is important for the trial court to have as much reliable information as possible when sentencing a defendant. I am concerned that the rule which the court announces in this case may unduly restrict that information in other cases.