**Jesse I. EVAN, Appellant,**

**v.**

**STATE of Alaska, Appellee.**

**No. A–5407.**

Court of Appeals of Alaska.

July 14, 1995.

Owners did not give reasons as to why these time entries represented an unreasonable expenditure of time.

Scott Jay Sidell, Law Office of Chris Provost, Bethel, for appellant.

James K. Metcalfe, Asst. Dist. Atty., Ben M. Herren, Dist. Atty., Bethel, and Bruce M. Botelho, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

MANNHEIMER, Judge.

Jesse I. Evan was charged by information with two counts of first-degree sexual abuse of a minor, AS 11.41.434(a), and one count of second-degree sexual abuse of a minor, AS 11.41.436(a). Under a plea agreement with the State, Evan waived grand jury indictment and pleaded no contest to the second-degree sexual abuse charge; the other charges were dismissed. Superior Court Judge Dale O. Curda sentenced Evan to 4 years' imprisonment with 2 years suspended (2 years to serve). Evan now appeals this sentence. We affirm.

Evan first challenges the superior court's reliance on the victim's account of the crime. This account was included in the pre-sentence report. In advance of sentencing,

Evan filed a pleading in which he "[gave] notice that he dispute[d] ... the version of events reported by K.E.".

In his pleading, Evan argued that, as a legal matter, K.E.'s statements could not qualify as "verified" for sentencing purposes under *Nukapigak v. State*, 562 P.2d 697, 700–02 (Alaska 1977), *aff'd on rehrg.*, 576 P.2d 982, 984–85 (Alaska 1978), unless the State introduced independent corroboration of those statements. Evan next argued that, even if K.E.'s statements qualified as "verified" under *Nukapigak*, the superior court still could not rely on them until Evan had cross-examined K.E. in court. Relying on *Pickens v. State*, 675 P.2d 665, 671 (Alaska App.1984), and *Agwiak v. State*, 750 P.2d 846, 849 (Alaska App.1988), Evan asserted that he had a constitutional right to confront and cross-examine K.E. at the sentencing hearing. Evan argued that "[t]rial judges may rely on verified hearsay information at sentencing ... only if the defendant fails to assert his confrontation rights". Evan concluded that, because he "intend[ed] to cross-examine K.E. extensively", Judge Curda could not rely on K.E.'s out-of-court statements unless the State proved that she was "truly unavailable".

In a written order issued before sentencing, Judge Curda partially accepted and partially rejected Evan's arguments. The judge ruled that K.E.'s reports of other, earlier sexual assaults committed against her by Evan were not sufficiently verified under *Nukapigak*, and he would therefore not consider these other incidents at sentencing. However, Judge Curda declared that he would rely upon K.E.'s hearsay account of the episode underlying the current charge against Evan. The judge ruled that Evan's request to cross-examine K.E. did not, by itself, prohibit the court from considering K.E.'s hearsay statements. Rather, to accomplish this purpose, Evan would have to offer a testimonial denial of the matters discussed in K.E.'s account.

Evan declined to offer a testimonial denial of K.E.'s statements. Judge Curda relied on K.E.'s statements when he decided the existence of aggravating factors and when he sentenced Evan. On appeal, Evan renews

his argument that K.E.'s statements in the pre-sentence report (which were apparently obtained from police reports) could not qualify as "verified hearsay" under *Nukapigak* unless the State introduced independent evidence to corroborate K.E.'s account.

In its initial opinion in *Nukapigak* (hereinafter *"Nukapigak* I"), the supreme court stated that "verified" meant "corroborated or substantiated by supporting data or information". 562 P.2d at 701 n. 2. This language could be read as support for Evan's argument. However, after saying this, the supreme court upheld the sentencing judge's reliance on uncorroborated hearsay reports of Nukapigak's other criminal acts and his violent behavior. These prior crimes had not been officially investigated or charged; the only evidence of these prior acts was the uncorroborated accounts of other people in Nukapigak's village; some of these accounts involved double-hearsay. Nevertheless, the supreme court distinguished the villagers' accounts (which it found to be "verified") from "bare accusations or unexplained arrests". *Nukapigak* I, 562 P.2d at 701.

Thus, from the court's first opinion in *Nukapigak*, it appeared that the requirement of "supporting data or information" could be satisfied by data or information contained in the hearsay account itself. This interpretation was confirmed by the court in its opinion on rehearing ("*Nukapigak* II"). The court granted rehearing to address Nukapigak's contention that the hearsay information at his sentencing was not "verified".

[Nukapigak] complains of our holding that the trial court was entitled to consider evidence of other instances of antisocial conduct contained in the presentence report. That information consisted of statements of various friends of Nukapigak, relatives, and members of the village council of Point Lay, Alaska, Nukapigak's home. We held that such information was sufficiently verified to be trustworthy and that it could, therefore, be considered in sentencing, where the defendant was given the opportunity to deny it or present contrary evidence.

The essence of Nukapigak's argument [is that the persons] interviewed by the author of the presentence report had no first-hand knowledge of the events described and, therefore, [this] information ... should not have been considered by the sentencing judge. [Nukapigak] argues that the information, being second-hand, was not sufficiently "verified" to be a proper subject for the court's consideration in framing its sentence.

*Nukapigak* II, 576 P.2d at 983 (footnote omitted).

In answer to Nukapigak's contention, the supreme court first stated that it agreed with the holding of the California Supreme Court in *People v. Chi Ko Wong*, 18 Cal.3d 698, 135 Cal.Rptr. 392, 409, 557 P.2d 976, 993 (1976), that "[a] defendant [who does] not exercise his right to present any materials or call any witnesses to contradict, explain or otherwise rebut materials in the [pre-sentence] report [is] foreclosed from raising such issues". *Nukapigak* II, 576 P.2d at 984. The court declared, "In the absence of any real indication that the information complained of might have been inaccurate, we believe that the sentencing judge was entitled to consider it; at least where, as here, that information, in and of itself, appears minimally trustworthy." *Id.* The court explained that "it is the defendant's obligation to comply with 'procedures to establish the claimed unreliability of materials properly submitted for sentencing purposes; a mere claim of invalidity is insufficient.' " *Id.* (quoting *Chi Ko Wong*, 135 Cal. Rptr. at 410, 557 P.2d at 994).

Based on *Nukapigak* II, we reject Evan's contention that Judge Curda could not consider K.E.'s hearsay statements unless the State independently corroborated them. Under *Nukapigak* II, the required verification for hearsay information at sentencing can be found in "that information, in and of itself", unless the defendant presents a "real indication" that the hearsay information is inaccurate. *Nukapigak* II, 576 P.2d at 984. We therefore uphold Judge Curda's finding that K.E.'s statements concerning the episode giving rise to the charge against Evan were "verified" for sentencing purposes.

This brings us to Evan's second argument—his contention that, once he requested

the opportunity to cross-examine K.E., Judge Curda could no longer rely on K.E.'s hearsay statements even if they were verified. Evan acknowledges that "the rules of evidence [are] relaxed at sentencing[,] allowing the court to consider hearsay evidence". *See* Alaska Evidence Rule 101(c)(2). Nevertheless, Evan asserts that "judges may rely on verified hearsay information at sentencing ... only if the defendant fails to assert his confrontation rights".

■ This, however, is a statement of the rule at trial, not the rule at sentencing. At trial, hearsay evidence is admissible unless the other party "assert[s] his confrontation rights"—that is, objects to the hearsay. *Cassell v. State*, 645 P.2d 219, 221 (Alaska App.1982). At sentencing, however, a defendant has only a limited right of confrontation and the normal rules against the admission of hearsay do not apply. *See* Evidence Rule 101(c)(2).

■ In *Hamilton v. State*, 771 P.2d 1358 (Alaska App.1989), this court recognized that criminal defendants have a conditional right at sentencing to require the State to bring its witnesses to court so that they may be cross-examined. *Compare Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) (a criminal defendant's Sixth Amendment right of confrontation does not extend to sentencing hearings). Under *Hamilton*, the State must produce its sentencing witnesses (or prove their unavailability and their credibility) if the defendant "denies the allegations under oath and submits to cross-examination". *Hamilton*, 771 P.2d at 1362.

Evan declined to deny K.E.'s allegations under oath. He relies on a case decided prior to *Hamilton: Pickens v. State*, 675 P.2d 665 (Alaska App.1984). In *Pickens*, this court indicated that a defendant might challenge hearsay at sentencing either by offering a testimonial denial or by demanding to cross-examine the declarant. 675 P.2d at 671 ("Absent an express, testimonial denial by Pickens of this incident *or* a specific request to cross-examine the victim, consideration of this verified incident of prior criminal conduct was proper.") (Emphasis added.)

Evan notes that the defendant in *Hamilton* only offered a testimonial denial and did not demand to cross-examine the hearsay declarant. *Hamilton*, 771 P.2d at 1361. From this, Evan argues that *Hamilton* must be confined to its facts and that the language from *Pickens* expresses the true rule: that a defendant can prevent the admission of hearsay evidence at sentencing either by offering a testimonial denial or by simply asking to cross-examine the out-of-court declarant.

Evan reads too much into the language used in *Pickens*. Because the defendant in *Pickens* neither offered a testimonial denial nor sought to cross-examine the hearsay declarant, it was not necessary for this court to address the hearsay issue in a substantive way. For the same reason, it was not necessary for this court to decide whether either of these two courses of action (testimonial denial or demand for cross-examination) was individually sufficient to preclude the State's use of hearsay at sentencing.

In contrast, *Hamilton* squarely addressed the issue of a defendant's right to object to the use of hearsay at sentencing. This court, citing *Nukapigak, Pickens,* and other Alaska cases, noted that "[t]he appellate courts of this state [had previously] considered similar arguments in a variety of cases" but had never completely resolved the issue. *Hamilton*, 771 P.2d at 1361–62. This court reviewed legal authority on a criminal defendant's right of confrontation in various contexts. This court also acknowledged the traditional willingness of state and federal courts to allow sentencing judges to "consider verified information adverse to a defendant even though it was based on hearsay". *Hamilton*, 771 P.2d at 1362. Striking a balance between these competing considerations, this court held in *Hamilton* that, when a hearsay declarant is available to testify, the State can not rely on hearsay evidence at sentencing "against a defendant who denies the allegations under oath and submits to cross-examination". *Id.*

The language of *Nukapigak* II indicates that there may be other circumstances in which a defendant can properly object to the government's use of hearsay at sentencing—circumstances in which, although the defen-

dant does not personally take the stand, the defense nevertheless "present[s] ... materials or call[s] ... 'witnesses to contradict, explain or otherwise rebut'" the government's hearsay, creating a "real indication that the information complained of [may be] inaccurate". *Nukapigak* II, 576 P.2d at 984 (in part quoting *Chi Ko Wong*, 557 P.2d at 993). However, a defendant can not preclude the use of hearsay at sentencing by simply asserting that he or she wishes to have the declarant brought to court.

This is the rule that Judge Curda applied in Evan's case. Evan stated that he wished to cross-examine K.E., but he chose not to present a testimonial denial of K.E.'s hearsay statements, nor did Evan "present any materials or call any witnesses to contradict, explain or otherwise rebut" K.E.'s statements. *Nukapigak* II, 576 P.2d at 984. On appeal, Evan attempts to explain his inaction by asserting that he was too intoxicated to remember the episode at all, and that it would therefore be "irrationality" to require him to affirmatively explain or rebut K.E.'s account of those events. However, as the supreme court stated in *Nukapigak* II, "[i]n the absence of any real indication that the information complained of might have been inaccurate, ... the sentencing judge [is] entitled to consider it". 576 P.2d at 984. Judge Curda was therefore entitled to consider K.E.'s hearsay statements at Evan's sentencing.

■ We turn now to Evan's claim that his sentence is excessive. As noted above, Judge Curda sentenced Evan to 4 years' imprisonment with 2 years suspended, or 2 years to serve.

Evan was a first-felony offender convicted of a class B felony; his sentencing was therefore governed by the guidelines this court established in *State v. Jackson*, 776 P.2d 320, 326–27 (Alaska App.1989). In *Jackson*, this court declared that a typical offender committing a typical to moderately aggravated offense should receive between 1 and 4 years to serve. Evan's sentence of 2 years to serve falls well within this benchmark range.

■ Nevertheless, Evan argues that, because this court set a range of from 1 to 4 years for a class of cases that runs the gamut

from "typical" to "moderately aggravated", *Jackson* must be construed to mean that a typical offender committing a "typical" class B felony should receive 1 year to serve, and that sentences in excess of 1 year are reserved for offenders committing aggravated offenses. According to Evan, a court can not sentence a first-felony offender to more than 1 year to serve unless the court affirmatively finds that the defendant's crime is "aggravated".

We reject this reading of *Jackson*. Evan's interpretation of *Jackson* would put it at odds with *Austin v. State*, 627 P.2d 657 (Alaska App.1981), the case this court specifically relied on when establishing the 1– to 4–year benchmark. *See Jackson*, 776 P.2d at 326.

In *Austin*, this court held that a first-felony offender who was not subject to presumptive sentencing should receive a more favorable sentence than the presumptive term of imprisonment established by the legislature for second-felony offenders convicted of the same offense unless the sentencing court found that the defendant's case was exceptional, either because the State had proved statutory aggravating factors or because of extraordinary circumstances that would have warranted referring the case to the three-judge sentencing panel (had the case been governed by presumptive sentencing). *Austin*, 627 P.2d at 657–58; *see also Benboe v. State*, 698 P.2d 1230, 1231 (Alaska App.1985). The presumptive term for second-felony offenders convicted of class B felonies is 4 years' imprisonment. *See* AS 12.55.125(d)(1). Thus, under *Austin*, Judge Curda could sentence Evan to up to 4 years to serve without making special findings.

*Jackson* was not intended to alter the *Austin* rule, but rather to implement it. We therefore reject Evan's argument that *Jackson* requires a sentencing court to find significant aggravating factors before the court can impose a sentence of more than 1 year to serve.

Evan challenges Judge Curda's finding that Evan's offense was among the most serious within the definition of second-degree sexual abuse of a minor. *See* AS 12.55.155(c)(10). Judge Curda made this

finding based on K.E.'s statements that, shortly before Evan sexually abused her, he aided another man in raping K.E. (by holding her down and removing her clothing). On the basis of this evidence, Judge Curda found that Evan was guilty of first-degree sexual assault, a more serious crime. Evan asserts that Judge Curda had no authority to consider K.E.'s hearsay statements. We have already decided this issue against Evan; we therefore uphold Judge Curda's finding.

■ Evan next asserts that Judge Curda gave improper weight to this aggravating factor. He correctly notes that proof of an aggravating factor will not automatically justify a significant increase in a defendant's sentence. *Compare Juneby v. State,* 641 P.2d 823, 833 (Alaska App.1982), *modified on other grounds,* 665 P.2d 30 (Alaska App.1983) (in cases governed by presumptive sentencing, even when aggravating factors are proved, a sentencing court should be cautious when making adjustments to the prescribed presumptive term). Judge Curda specifically noted this rule of law in his remarks at Evan's sentencing. Moreover, even though Judge Curda concluded that Evan had committed a more serious crime than the one he was convicted of, the judge nevertheless sentenced Evan to a prison term within the lower half of the *Jackson* benchmark range. Evan has not shown that Judge Curda gave inordinate weight to this aggravating factor.

Evan also argues that Judge Curda gave insufficient attention to Evan's potential for rehabilitation and, at the same time, improperly stressed the sentencing goals of deterrence and reaffirmation of societal norms. Judge Curda's sentencing remarks show that he actively considered Evan's lack of prior criminal record. Judge Curda also expressed his belief "that Mr. Evan has probably been deterred [by the experience of] going through this". However, Judge Curda found that Evan had committed an atypically serious offense, first by helping a friend to rape K.E., then by premeditatedly returning to K.E. later and committing the act of sexual abuse for which he was convicted. Based on these findings, Judge Curda assessed Evan's potential for rehabilitation as "fair, and not exceptional".

■ A sentencing judge has substantial discretion when evaluating the priority of the various sentencing goals and assessing the weight they should receive under the facts of a particular case. *Asitonia v. State,* 508 P.2d 1023, 1026 (Alaska 1973). We have independently examined the record in this case, and we conclude that Judge Curda did not abuse that discretion.

The judgement of the superior court is AFFIRMED.